Argued and submitted December 7, 2005, affirmed July 12, 2006

Lori A. CHRISTENSEN,
*Appellant,*

*v.*

Sheldon R. COBER, M.D.,
*Respondent.*

C030889CV; A126181

138 P3d 918

Dean Heiling argued the cause for appellant. With him on the briefs was Heiling Dwyer & Associates.

Janet M. Schroer argued the cause for respondent. With her on the brief was Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

**BREWER, C. J.**

Plaintiff appeals from a judgment on a jury verdict for defendant in this action for medical malpractice. Although plaintiff makes multiple assignments of error, we write only to address her argument that the trial court erred in failing to submit to the jury for use in its deliberations a photograph that the court had admitted into evidence for demonstrative purposes. We affirm.

Plaintiff was afflicted with carpal tunnel syndrome in both hands. Defendant, a physician, performed an endoscopic carpal tunnel release on plaintiff's left hand. That surgery was successful. Defendant later performed the same surgical procedure on plaintiff's right hand. During the surgery, defendant severed the median nerve and flexor pollicis longus tendon of plaintiff's right hand. Plaintiff then brought this action against defendant for malpractice, alleging that defendant failed to obtain plaintiff's informed consent to the endoscopic procedure and that, by making a surgical incision in an improper location and failing to use a synovial elevator to clear synovium from the area, thereby compromising his view during surgery, defendant negligently severed the nerve and tendon.[1] Defendant later performed a surgical repair procedure on the nerve and tendon.

At trial, plaintiff called Dr. Rotman, an orthopedic hand surgery specialist, as an expert witness. Rotman identified two possible ways that defendant could have severed the nerve and tendon during surgery: (1) by incorrectly locating the incision and (2) by failing to use the correct axis during the surgery. Rotman testified that, although defendant correctly located the incision, defendant could not have severed the nerve and tendon without improperly intruding during surgery into the area in which they were located.

During his direct testimony, Rotman used without objection a video presentation to describe and illustrate carpal tunnel syndrome and appropriate carpal tunnel release

---

[1] Plaintiff made additional allegations of negligence that the trial court struck at the close of the evidentiary phase of the case. Those allegations are not at issue on appeal.

procedures. During that presentation, Rotman described a device called a synovial scraper that he testified is used to scrape off the bursa so that a surgeon can adequately see the transverse carpal ligament on which a release is to be performed. At that point, the following testimony and colloquy occurred:

"[ROTMAN]: You know, [plaintiff's counsel], we have that nice picture of what that looks like, which is better than anything I can show.

"[PLAINTIFF'S COUNSEL]: That would be plaintiff's exhibit 16?

"[ROTMAN]: Yes.

"[PLAINTIFF'S COUNSEL]: What is that?

"[ROTMAN]: This is the picture of what you will see when you clear off that ligament. And why don't you just— you can pass this—

"[PLAINTIFF'S COUNSEL]: Well, why don't I offer it and let it be received, and then we can have the jury take a look at it?

"[ROTMAN]: Okay. What you're seeing there is fibers going from left to right.

"[DEFENSE COUNSEL]: No objection for demonstrative purposes, Your Honor.

"* * * * *

"THE COURT: Exhibit 16 is received for demonstrative purposes."

The exhibit was marked on the trial court's exhibit list as having been received only for demonstrative purposes. Using the exhibit, Rotman then testified in detail concerning the level of "visualization" of the ligament that he deemed necessary to properly release it. He testified that he got "nervous when [he saw] anything but that picture. That's what you want to see." He also stated to "make sure nothing is obstructing your view. Make certain that you're in the carpal tunnel. These are all obvious. You have to follow these rules. If you can't see, get out of there."

At the close of plaintiff's case-in-chief, the court asked the clerk if all of plaintiff's exhibits had been received and asked plaintiff's counsel to identify which were "for demonstrative purposes only." In the ensuing colloquy, plaintiff offered Exhibit 21, a wage loss summary. Defendant's counsel then stated, "I have no objection to that for demonstrative purposes only, but not as substantive evidence." Plaintiff's counsel agreed that Exhibit 21 had been received for that purpose. He then stated, however, that "Exhibits 1 through 19" were "directly related to the case and substantive." After a discussion of other exhibits, the following colloquy occurred:

"[PLAINTIFF'S COUNSEL]: All right. Now I think we have everything in.

"16 is demonstrative, and 17, 18, 19.

"THE CLERK: And then the video.

"[PLAINTIFF'S COUNSEL]: The video.

"THE CLERK: And the (indiscernible).

"[PLAINTIFF'S COUNSEL]: Yes. Okay. Those are demonstrative, yes.

"THE COURT: Have we clarified everything you need to know about exhibits?

"[PLAINTIFF'S COUNSEL]: Yes, we have. Plaintiff rests."

After the close of the evidence, but before the jury was excused to deliberate, the parties again discussed exhibits with the court. The following colloquy occurred:

"[PLAINTIFF'S COUNSEL]: We're good to go. Now, just with regard to exhibits, the demonstratives like the videotape, that doesn't go to the jury, does it? I mean, I don't think we need to—

"THE COURT: If it has not been received as an exhibit, then I think that its use as—if it has not been received as evidence, I think its use is limited to whatever was used in the demonstrative capacity.

"[PLAINTIFF'S COUNSEL]: All I'm saying is that if we're going to have the jury get the video in there and

replay this and so on—I mean, I suppose it's okay if they do, but—

"[DEFENSE COUNSEL]:   I don't agree. I mean all of these videotapes were appropriately used by both sides during the trial, but in my view, none of them go to the jury room because none of them were offered to—for the proof of the matter asserted. They were all just used as illustrative, demonstrative type exhibits.

"[PLAINTIFF'S COUNSEL]:   I would be agreeable to that. None of the videotapes go to the jury, that's fine with me.

"THE COURT:   You're right. You're right. Okay. We are in recess."

When the jury was excused to deliberate, the trial court did not submit to the jury those exhibits that had been received in evidence for demonstrative purposes; however, the court did send the other exhibits that had been received in evidence to the jury room. After jury deliberations had commenced, the court reconvened for a further colloquy with counsel, in which plaintiff's attorney informed the court that he "didn't realize that none of the demonstrative exhibits would go to the jury." He asked that two exhibits, one of which was Exhibit 16, be taken to the jury room.[2] The court and counsel then engaged in an extensive colloquy about the difference, if any, between the admission of evidence for "demonstrative," as opposed to "substantive," purposes. Plaintiff's attorney explained that Exhibit 16 "helps the jury understand that what [defendant] thought he saw and what's shown on the—no. What's shown on the photographs is not the transverse carpal ligament." Defendant's attorney explained that, in order to avoid the complication of having to controvert plaintiff's demonstrative exhibits with demonstrative exhibits of his own, none of which was directly focused on the "case at hand," he had not objected to the admission of plaintiff's exhibits only for demonstrative purposes. As defendant's attorney saw things, that designation meant that an exhibit could be used to illustrate witnesses' testimony in the courtroom, but was not to be taken into the jury room during deliberations.

---

[2] The other exhibit is not at issue on appeal.

Defendant's attorney added:

"So all the jury knows if they were to get this stuff now, after they've already begun deliberations, for one thing, they're going to place potentially greater importance on it, and, you know, it's for the plaintiff to be able to demonstrate and show them and use and draw inferences from, but at this point they don't know what that patient was, how old that patient was, was this a virgin surgery, a redo surgery, a male, female. We don't even know if the same tools were used. We don't know anything about it other than this is what I think Dr. Rotman represents as the underside of transverse carpal ligament."

The trial court ultimately agreed with defendant's counsel and refused plaintiff's request that the exhibit be sent to the jury room. The court reasoned:

"I think it is within the discretion of the Court whether something can be used for demonstrative purposes, and * * * I believe that it's also at the discretion of the court whether it would actually then be received for other purposes. And I don't think at this late time that I can do that. I was trying to make the best record that [I] could, too, and so I'll decline to do that.

"They're not of persons in this case. I take it that they're not necessarily anything that [defendant] had anything to do with, so they're just pictures to identify what these things look like in general, and you've used them for that purpose. And I will not allow them to be received or go to the jury for any other purpose.

"I think at this point, too, that it would tend to create some import to it that it wouldn't merit, other than just a description of how things generally look."

On appeal, plaintiff renews her challenge to the trial court's failure to submit Exhibit 16 to the jury for consideration during its deliberations. She contends that the trial court was required to submit all exhibits received in evidence—regardless whether they were designated as demonstrative exhibits—to the jury for use in its deliberations. Plaintiff relies on ORCP 59 C(1), which provides that "[u]pon retiring for deliberation the jury may take with them all exhibits received in evidence, except depositions."

Defendant makes two arguments in response. He first asserts that plaintiff has not preserved her argument for appeal. Alternatively, defendant argues that the error, if any, in failing to submit the exhibit to the jury was harmless. We address those arguments in turn.

■■ Our preservation analysis emphasizes two fundamental considerations:

"First, the requirement that an issue be presented to the lower tribunal in order for it to be raised on appeal serves to prevent error. If the first tribunal is given the opportunity to make a ruling, its ruling may well be correct. Relatedly, it would be a disservice to the economy of the process to require the lower tribunal to conduct further proceedings in order to rectify an error that it was never given the initial opportunity to avoid.

"The second reason is that requiring a party to present its issues at each adjudicative level is essential to a fair process for the other parties and participants. Generally, the opportunity to respond at the appellate level does not cure the denial of that opportunity in trial court and agency proceedings, where all of the factual and much of the legal development of cases must occur."

*J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den*, 321 Or 47 (1995). Put more succinctly, the most significant question is whether the trial court had "a realistic opportunity to make the right decision." *State v. Doern*, 156 Or App 566, 579, 967 P2d 1230 (1998), *rev den*, 328 Or 666 (1999) (Landau, J., dissenting).

Defendant's primary preservation argument is that plaintiff failed to timely object to the admission of Exhibit 16 only for demonstrative purposes. According to defendant:

"The record demonstrates that plaintiff did not object on the second day of trial when the court clearly stated that the exhibit was admitted for demonstrative purposes only. Plaintiff did not make her request to the trial court that her demonstrative or illustrative exhibits go to the jury until six days later, *after* the jury had been out deliberating for some time."

(Emphasis in original.) Defendant is correct that plaintiff did not object to the designation of Exhibit 16 as demonstrative

evidence when the exhibit was received. When defendant's attorney stated at various points during the trial that he did not object to the admission of exhibits for demonstrative purposes, and when the trial court received exhibits for that purpose, neither the parties nor the court elaborated on their understandings of the effect of that designation. Although they ultimately disagreed on that effect, their disagreement did not fully emerge until after the jury had been excused to deliberate with some, but not all, of the exhibits that had been admitted into evidence. Thus, the question whether plaintiff failed to preserve her argument for appeal depends, in part, on the resolution of the underlying claim of error, that is, whether the designation of Exhibit 16 as having been received only for demonstrative purposes meant that it should not have been submitted to the jury for use in deliberations.[3] That inquiry requires us to consider the nature of demonstrative evidence.

■  There are two types of demonstrative evidence. The first type consists of the display of direct evidence, usually a person or object, in a courtroom. *Lambert v. Palmateer*, 187 Or App 528, 537, 69 P3d 725, *rev den*, 336 Or 125 (2003). It conveys a " 'firsthand sense impression to the trier of fact.' " *Id.* (quoting 2 *McCormick on Evidence* § 212, 3 (4th ed 1992)). That kind of demonstrative evidence is often " 'the best and most direct evidence of a material fact,' " for example, by showing the nature of an assault on the victim. *Id.* (quoting 2 *McCormick on Evidence* § 215 at 21). As such it often does not involve the use of a tangible exhibit that can be received in evidence and submitted to the jury for use in its deliberations.

■  A second type of demonstrative evidence involves exemplars, tests, experiments, and the like that do not purport to be direct evidence of an object or event that is at issue in the case but, rather, are intended to simulate or illustrate the object or event. *See, e.g., Rich v. Cooper*, 234 Or 300, 311-13, 380 P2d 613 (1963) ("leaden sap" similar to one used by defendant admitted in evidence). Again, in some instances

---

[3] The nature of defendant's argument thus inverts the traditional order of analysis in a preservation challenge by requiring us to consider at the outset the merits of the claim of error.

evidence of the latter type can be in the form of an exhibit; in other instances it is not.

■  The decision whether to admit demonstrative evidence is vested in the trial court's discretion. *Id.* at 311-12. Regardless of whether an exhibit that is admitted in evidence is designated as demonstrative or not, though, there is no rule of evidence or trial procedure that authorizes the exclusion of such an exhibit from the jury's use and consideration during deliberations. In fact, as we now explain, ORCP 59 C(1) states the opposite rule: "Upon retiring for deliberation the jury may take with them all exhibits received in evidence, except depositions."

When interpreting statutes and the Oregon Rules of Civil Procedure, we apply the methodology of *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). *Mulier v. Johnson,* 332 Or 344, 349, 29 P3d 1104 (2001). Accordingly, we begin with those elements relevant to the text and context of the rule and statutes at issue. As part of the first level of analysis, we also consider "[p]rior cases interpreting predecessor enactments of the same statutes." *Stupek v. Wyle Laboratories Corp.,* 327 Or 433, 441, 963 P2d 678 (1998).

The word "may" ordinarily denotes permission or the authority to do something. *Nibler v. Dept. of Transportation,* 338 Or 19, 26-27, 105 P3d 360 (2005); *see also, e.g., Martin v. City of Tigard,* 335 Or 444, 452, 72 P3d 619 (2003) ("The ordinary meaning of the word 'may' is 'have liberty to.' "). Thus, although the rule uses the word "may," not "shall," it refers to the jury's "authority" or "liberty" to take all exhibits—except depositions—received in evidence to the jury room; it does not confer authority upon the trial court to selectively withhold any of those exhibits from the jury. Stated differently, the jury, not the court, is the object of the legislative conferral of authority. Thus, the use of the word "may" in this context is a grant of authority to the jury, not a circumscription of that authority.[4]

---

[4] The issue before us is not whether the legislature's choice of "may," rather than "shall," gives a jury authority not to take received exhibits with them to the jury room. Whether or not that is true, nothing in the choice of words indicates a conferral of discretion on the trial court to withhold such authority.

In that regard, our decision in *Waldvogel v. Jones*, 196 Or App 446, 103 P3d 124 (2004), is instructive. The issue on appeal in that case was whether a trial court may, or must, award double damages under the Oregon Residential Landlord Tenant Act when a landlord wrongfully withholds any portion of the tenant's security deposit. We noted that ORS 90.300(10) provides that the landlord may claim all or part of the remaining balance if, within 31 days after the termination of the tenancy, the landlord provides a written accounting that specifies the bases of the claim. *Id.* at 449. The dispositive issue turned on the meaning of ORS 90.300(14), which provides that, if the landlord fails to provide such a written accounting within 31 days, "the tenant may recover the money due in an amount equal to twice the amount" of the portion of the deposit wrongfully withheld. We noted that we previously had construed the statute:

> "In [*Beckett v. Olson*, 75 Or App 610, 707 P2d 635 (1985)], we addressed the meaning of the statutory provision that 'the tenant may recover' twice the security deposit wrongfully withheld:
>
> > " 'The statute is unambiguous and absolute. The use of "the tenant *may* recover" rather than "the tenant *shall* recover" does not give the *court* any discretion. Rather, it is a statement of the steps the *tenant,* as a matter of right, may take if the landlord does not comply with the statute. If the tenant decides to sue and is successful, the recovery will be the full penalty; that is, if the facts are shown, the tenant is entitled to judgment. The amount due does not depend on the landlord's good faith or bad faith or on the tenant's damages or lack of damages. The obvious purpose of the statute is to encourage landlords to fulfill their statutory duties by establishing an automatic penalty for their failure to do so. Discretion to reduce the award would subvert that statutory purpose.'
>
> "75 Or App at 613-14 (emphasis in original).
>
> "Defendant insists that *Beckett* should be reexamined and overruled because it was decided before [*PGE*], and improperly construes the text of the statute. In particular, defendant complains, *Beckett* construes the discretionary term 'may' to mean 'shall.' We should, defendant suggests, restore the proper meaning of the statute by construing it to

mean that the trial court may—but not must—award double damages.

"Defendant, however, misreads both *Beckett* and the statute. As we noted in *Beckett,* ORS 90.300(14) does not refer to the *trial court's* discretion. The subject of the sentence is the *tenant* and the tenant's discretion in deciding whether to assert a statutory right to recover double damages. Once the tenant decides to exercise that choice, and if the other statutory prerequisites are satisfied, the trial court must award the double damages that the statute requires."

*Waldvogel,* 196 Or App at 449-50 (emphasis in original).

That is the circumstance here. The text of the rule focuses on the *jury's* ability to take exhibits with it for use in deliberations; it confers no authority on the *court* to withhold from the jury any received exhibits, except depositions.[5] For the trial court to exercise such authority would be inconsistent with the statutory directive that the jury may take "all" of the received exhibits except depositions with them for use in deliberations. Moreover, the context of the rule confirms our reading of its text. ORCP 59 establishes a general template for jury deliberation procedures. Subsections C(1) through C(4) in particular address the materials that jurors may use in their deliberations. ORCP 59 C(2) provides that "[p]leadings shall not go to the jury room. The court, may, in its discretion, submit to the jury an impartial written statement summarizing the issues to be decided by the jury." By its terms, ORCP 59 C(2) demonstrates that the Council on Court Procedures and the legislature understood how to confer discretionary authority on the trial court either to provide or withhold something from the jury.[6] Again, they did not do so in ORCP 59 C(1).

---

[5] Trial judges have authority to provide relief from the application of the Uniform Trial Court Rules (UTCR) "if necessary to prevent hardship or injustice." UTCR 1.100. However, no such authority exists with respect to the Oregon Rules of Civil Procedure. To the contrary, ORCP 1 provides that "[t]hese rules govern procedure and practice in all circuit courts * * *."

[6] Similarly, ORCP 58 establishes a general template for the conduct of trials. Subsections B(3) through B(6) of that rule set out general procedures for the presentation of opening statements, evidence, and closing argument. However, ORCP 58 A confers on trial courts the authority to depart from those procedures "for good cause stated in the record." Again, no comparable conferral of discretion exists with respect to ORCP 59 C(1).

The limited case law construing the rule's statutory antecedent, ORS 17.320, confirms our understanding.[7] In *State v. Reyes*, 209 Or 595, 636-37, 308 P2d 182 (1957), for example, the Supreme Court held that, where a recorded disc of the defendant's incriminating statement was properly received in evidence, giving the jury a machine on which the disc could be played back did not constitute the giving of undue weight to such evidence. In reaching that conclusion, the court stated that, "The disc, being an exhibit in the case, *necessarily* went to the jury (ORS 17.320)[.]" *Id.* at 636 (emphasis added). *See also Shields v. Campbell*, 277 Or 71, 74-75, 74 n 2, 559 P2d 1275 (1977) (upholding, under ORS 17.320, the trial court's submission to the jury for use in its deliberations a copy of an appellate opinion, after the trial court had warned the plaintiff's counsel that "if the exhibit were received in evidence it would be subject to perusal by the jury"); *State v. Heintz*, 35 Or App 155, 158, 580 P2d 1064 (1978), *aff'd*, 286 Or 239, 594 P2d 385 (1979) (adopting view that, under ORS 17.320, the jury could play a tape recording received in evidence because "the tape was evidence which the jury was entitled to consider during its deliberations pursuant to ORS 17.320").

Significantly, defendant has not cited any case, nor have we found one, construing ORCP 59 C(1) or its statutory antecedents to authorize a trial court to withhold from a jury's use in deliberations any exhibit—except a deposition—that was received in evidence, whether or not the exhibit was described as having been received for demonstrative purposes. We conclude that the description in this case of Exhibit 16 as having been received only for demonstrative purposes did not preclude its submission to the jury. To the contrary, it was error to withhold the exhibit from the jury, and plaintiff

---

[7] ORCP 59 C(1) was promulgated by the Council on Court Procedures in 1978. The rule "[was] based upon existing ORS sections." Fredric R. Merrill, *Oregon Rules of Civil Procedure: 1990 Handbook* 182 (staff comment). ORCP 59 C(1) was derived from ORS 17.320, which, in all material respects, was identical to the present rule. The language of the rule extends back, in very close parallel, to the earliest Oregon code enacted after statehood. General Laws of Oregon, Civ Code, ch II, § 202, p 189 (Deady 1845-1864) (enacted October 11, 1862), provided that, "[u]pon retiring for deliberation, the jury make take with them * * * all papers which have been received as evidence on the trial (except depositions)[.]"

did not fail to preserve the error by not objecting to that description.

■ We turn to defendant's additional argument that plaintiff failed to preserve the error by expressly acknowledging, at the close of the evidence, that she understood that a videotape admitted as demonstrative evidence would not be sent to the jury room. The colloquy in question occurred before the jury was excused to deliberate. As noted, at that point, plaintiff's counsel inquired, "Now, just with regard to exhibits, the demonstratives like the videotape, that doesn't go to the jury, does it? I mean, I don't think we need to—." However, the court responded with a correct statement of the law by stating that "if it has not been received as an exhibit, then I think that its use as—if it has not been received as evidence, I think its use is limited to whatever was used in the demonstrative capacity." It is reasonable to infer from the court's statement that it understood, by contrast, that exhibits that had been received in evidence would be submitted to the jury.

The colloquy then focused exclusively on the specific subject of the videotape:

"[PLAINTIFF'S COUNSEL]: All I'm saying is that if we're going to have the jury get the video in there and replay this and so on—I mean, I suppose it's okay if they do, but—

"[DEFENSE COUNSEL]: I don't agree. I mean, all of these videotapes were appropriately used by both sides during the trial, but in my view, none of them go to the jury room because none of them were offered to—for the proof of the matter asserted. They were all just used as illustrative, demonstrative type exhibits.

"[PLAINTIFF'S COUNSEL]: I would be agreeable to that. None of the videotapes go to the jury, that's fine with me.

"THE COURT: You're right. You're right. Okay. We are in recess."

The issue whether to submit to the jury exhibits that have been received in evidence is not a decision point on which the parties or the trial court ordinarily focus. Rather, it

usually is a matter of routine. The situation here thus does not present a typical preservation problem. Instead, defendant's argument seems to be more in the nature of an assertion of invited error. That is, defendant appears to argue that, by agreeing that a particular demonstrative exhibit, the videotape, would not be sent to the jury, plaintiff invited the error of which she complains.[8] However, accepting at face value defendant's characterization of his challenge as one of preservation, it is unavailing.

It appears from the record that defendant's attorney did not expect that any exhibit received only for demonstrative purposes would be submitted to the jury.[9] However, it is less apparent that plaintiff's attorney and the trial court consistently shared that view. We cannot infer from the record that plaintiff led the trial court to believe that it should not submit to the jury any demonstrative exhibits that had been

---

[8] It may be that defendant has not framed the problem as one of invited error because such a determination presupposes that the trial court actually made a salient ruling. *See, e.g., Kentner v. Gulf Ins. Co.*, 298 Or 69, 73, 689 P2d 955 (1984) (trial court's admission of evidence is not reversible when party assigning error introduced the evidence in question at trial). In this case, the trial court made no such ruling with respect to Exhibit 16 before the jury was excused for deliberations.

[9] It is sometimes the case that litigants do not contest the use in testimony of demonstrative evidence that they do not expect to be submitted to the jury for use in its deliberations. By failing to object to such evidence, an opponent may wish to avoid distracting and time-consuming courtroom detours into controversies that are collateral to the central issues in the case. Likewise, the proponent of such evidence may think it sufficient to achieve a courtroom impact from its use without litigating its admissibility. In such circumstances, the better practice is to mark for identification an exhibit that is to be used only for the purpose of a courtroom illustration or demonstration, but not to be admitted in evidence, and make certain that its courtroom use is clearly explained in the record.

Many years ago, the Supreme Court aptly described the consequences for the record of the haphazard use of demonstrative evidence:

"To visualize the nature of the accident it is necessary to describe as best we can the particular gear that plaintiff was handling and his function with it when the accident, which plaintiff claimed was the cause of his injury, occurred. The plaintiff's activity was demonstrated to the jury, in part, by reference to a ships' model exhibited in the courtroom. No one bothered to put in the record a description of the ships' model. The witnesses and counsel made numerous references to 'here' and 'there,' 'this' and 'that'. The transcript contains many notations by the court reporter that a witness was 'demonstrating'. The result is meaningless to us. The use of demonstrative evidence and exhibits may be excellent to educate a jury but it adds nothing but confusion to a written record unless explanation is made or the exhibit used is presented in evidence and intelligently used."

*Lazzari v. States Marine Corp.*, 220 Or 379, 381, 349 P2d 857 (1960).

received in evidence other than videotapes. Most of the quoted colloquy centered on the videotapes, not demonstrative exhibits in general. More significantly, though, there is no indication in the record that, before the case was submitted to the jury, the trial court itself did not intend to furnish the jury with all other exhibits that had been received in evidence.[10] In short, plaintiff's conduct before the jury commenced deliberations did not prevent the trial court from making the right call in deciding which exhibits to submit to the jury. Therefore, plaintiff did not fail to preserve the error.

■ ■  Finally, we address defendant's alternative argument that the error was harmless. OEC 103(1) provides that "[e]vidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" We view evidentiary error as reversible error— *i.e.*, as "substantially affecting the [appellant's] rights"— when, based on our assessment of the whole record, we believe that there was a substantial possibility that the error affected the result of the trial. *Brown v. Boise-Cascade Corp.*, 150 Or App 391, 419, 946 P2d 324 (1997), *rev den*, 327 Or 317 (1998) (internal quotation marks omitted; bracketed material in original). Here, the jury saw the exhibit and heard plaintiff's expert testify about it. Even without the exhibit, the jury could recall Rotman's testimony that the surgery performed in this case should not be done with an obstructed view of the transverse carpal tunnel ligament. In any event, defendant did not cross-examine Rotman on that issue, and defendant agreed in his own testimony that it is necessary to clearly see the ligament in order to properly perform the surgery. Plaintiff has not shown that there was a substantial possibility that the error affected the result of the trial. Accordingly, we agree with defendant that the error was harmless.

Affirmed.

---

[10] It is true that the trial court later expressed doubt about whether demonstrative evidence had to be submitted to the jury. However, that colloquy occurred after the court already had failed to submit Exhibit 16 to the jury along with the other exhibits that had been received in evidence.