JAMES, J.
*437 Defendant appeals a judgment of conviction for attempted assault on a public safety officer, resisting arrest, and second-degree criminal mischief, raising nine related assignments of error, all alleging that statements made by the prosecutor during closing argument that commented on defendant's courtroom behavior were improper. Defendant argues that the trial court abused its discretion by failing to strike the comments from the jury's consideration. We agree, and, concluding that the failure to strike was not harmless, accordingly reverse and remand.
Defendant's prosecution arose from an incident that occurred at Portland City Hall during a public meeting of the Portland City Council. Defendant entered the chambers and spoke to the crowd while being filmed by an associate. After about 20 minutes, one of the commissioners attempted to calm defendant and the encounter escalated into shouting, which drew the response of the police.
Portland Police Officer Engstrom arrived in the chambers, followed shortly by two other officers. Defendant approached the officers, yelling at them. The officers told defendant to back up and grabbed defendant's left hand. Soon thereafter, according to trial testimony, defendant pulled an officer's hand off his left arm and threw two right hooks at an officer, hitting his arm and shoulder area. One officer then grabbed defendant and wrestled him to the council desk. After handcuffing defendant, the officers wanted to walk him from the council chamber but defendant refused to walk, so an officer placed him on the table in front of the council desk.
Ultimately, as the officers were escorting defendant out of the building, according to officer testimony, he kicked one of the officers in the shin repeatedly. After the officers placed defendant in a patrol car, defendant kicked and tore into the seatbelt assembly, breaking it in several places. As defendant testified, he "tore the hell out of that police car" and "did as much damage * * * as [he] possibly could."
Defendant chose to testify in his own defense, as well as to represent himself throughout a nearly weeklong *438 trial-a trial that was obviously, and understandably, made more difficult by defendant's courtroom behavior. In closing argument, the prosecutor repeatedly encouraged the jury to *473 consider defendant's behavior in the courtroom-when defendant was not on the witness stand-in assessing whether defendant committed the alleged crimes at city hall. Among other things, the prosecutor stated:
"Now, you'll see this video, and I've moved it up to about the 21-minute mark. You've already listened to its entirety once, because the first 20 minutes of that video is just [defendant] doing, on November 25th, what he did here today, create a scene.
"* * * * *
"He stayed there and he continued to talk, to rant, to revel in that moment. And he got worked up then, just as you saw him get worked up in court a couple of times."
After that second comment defendant objected, stating, "The demeanor of the Defense counsel has nothing to do with the witness or the evidence." The trial court overruled the objection, indicating that the prosecutor's statement was permissible closing argument. The prosecutor continued, stating, among other things during closing argument:
• "You saw as [defendant] advanced at Officer Engstrom [at trial], yelling at him, pointing at him, walking towards him to the point where the Judge had to order him back. He got worked up then just as he did in that City Hall."
• "In [defendant]'s head, he's the star of the show. He wants that spotlight. He wants that attention and he wants that validation. And he worked himself up-he worked himself up on a-remember, he worked himself up this week."
• "[I]t is clear from * * * [defendant's] behavior in court, that he didn't lose control on [the charged occasion]."
• "So [defendant] reveled in that same attention, the show, the spectacle, just like he did in court over the past week."
• "You saw how aggressive he was in the video. You saw him show signs of that aggression here in the courtroom."
*439 The jury convicted defendant, and this appeal followed. On appeal, now represented by counsel, defendant argues that the trial court abused its discretion in permitting the prosecutor to advance a closing argument that contained the statements set forth above. Specifically, defendant argues that his behavior in the courtroom, when not testifying on the witness stand, was not evidence and the prosecutor's argument was, therefore, impermissibly asking the jury to consider facts not in evidence.
In response, the state first agrees that defendant's single objection adequately preserved the issue, and in light of the trial court's ruling, any further objections to later remarks in closing would have been futile. See State v. Logston , 270 Or. App. 296, 302, 347 P.3d 352 (2015). We agree with the state's concession on that point. Although it is a close call, we interpret defendant's objection that "[t]he demeanor of the Defense counsel has nothing to do with the witness or the evidence" to adequately set up the dichotomy of what is evidence from what is not evidence and to sufficiently argue that his demeanor was separate and distinct from "evidence," so as to put the issue before the trial court. See State v. Wyatt , 331 Or. 335, 343, 15 P.3d 22 (2000) (The purposes of preservation are "to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.").
We review a trial court's decision regarding control of closing argument for an abuse of discretion. Cler v. Providence Health System-Oregon , 349 Or. 481, 487, 245 P.3d 642 (2010) (relying on R. J. Frank Realty, Inc. v. Heuvel , 284 Or. 301, 306, 586 P.2d 1123 (1978) ). "In general, in presenting closing arguments to the jury, counsel has 'a large degree of freedom' to comment on the evidence submitted and urge the jury to draw any [and] all legitimate inferences from that evidence." Cler , 349 Or. at 487-88, 245 P.3d 642 (quoting Huber v. Miller , 41 Or. 103, 115, 68 P. 400 (1902) ). However, that freedom is not without limitation-and one key limitation on closing argument is the prohibition of counsel making "statements of facts outside the range of evidence." Cler, 349 Or. at 488, 245 P.3d 642 ; see also Huber , 41 Or. at 115, 68 P. 400 ; see generally John H. Wigmore, *440 6 Evidence in Trials at *474 Common Law § 1807 (Chadbourn rev. 1979) ("[C]ounsel must not make assertions as to facts of which evidence must have been introduced but has not been or will not be introduced." (Emphasis omitted.)); Trial , 88 CJS 353 § 309 (2008) ("Counsel must be confined to the issues and the evidence, and will not be allowed to comment on or state facts not in evidence or within the issues.").
Much of the parties' arguments before this court have concerned whether a defendant's courtroom behavior can properly become evidence. But we need not address in detail if such behavior can become evidence or how introduction of such evidence would occur procedurally. It suffices that, in this case, defendant's courtroom behavior-specifically his behavior when not on the witness stand-was not in evidence.
Evidence for the consideration of a factfinder at trial consists of the testimony and demeanor of witnesses while under oath and exhibits received into evidence. Statements by individuals in the courtroom, even parties, are not "evidence" when those statements are not given while a person is under oath on the witness stand. See, e.g. , State v. Guzek , 358 Or. 251, 276, 363 P.3d 480 (2015) (noting that a defendant's allocution is "not evidence"). Similarly, while a "display of direct evidence, usually [by] a person or object, in a courtroom" may potentially qualify as demonstrative, it does not become demonstrative evidence until it is offered and admitted. Christensen v. Cober , 206 Or. App. 719, 727, 138 P.3d 918 (2006) ; see also Lambert v. Palmateer , 187 Or. App. 528, 537, 69 P.3d 725, rev. den. , 336 Or. 125, 79 P.3d 882 (2003). Here, we can find no indication in the record where defendant's behavior, nor his statements in court while he was off the witness stand, were offered by a party, or accepted by the trial court, into the evidentiary record.
The state urges us to consider cases from other jurisdictions, which have held that, even though not evidence, a prosecutor can nevertheless comment on a defendant's demeanor when he is not on the witness stand. The Massachusetts Supreme Court, for example, held that a prosecutor's comments on a defendant's behavior during trial were permissible because "the prosecutor did not suggest that *441 he had knowledge the jury did not share." Commonwealth v. Smith , 387 Mass. 900, 907, 444 N.E.2d 374, 380 (1983) ; see also Woodall v. Commonwealth , 63 S.W.3d 104, 125 (Ky. 2001) ("The prosecutor was entitled to make a comment on the demeanor of [defendant] in the courtroom."); Wherry v. State , 402 So.2d 1130, 1133 (Ala. Crim. App. 1981) ("The conduct of the accused or the accused's demeanor during the trial is a proper subject of comment.").
The state acknowledges, however, that other courts have held to the contrary. In United States v. Schuler , 813 F.2d 978, 980 (9th Cir. 1987), the Ninth Circuit held that the courtroom demeanor of the nontestifying defendant was not evidence and, thus, the prosecutor's reference to that demeanor violated the defendant's right to be convicted based only on evidence adduced at trial. Likewise, in United States v. Pearson , 746 F.2d 787, 796 (11th Cir. 1984), the prosecutor's closing argument included statements such as "Does it sound to you like he was afraid? You saw him sitting there in the trial. Did you see his leg going up and down? He is nervous." The Eleventh Circuit found such comments were reversible error, holding that:
"In overruling [the defendant's] objection and in failing to give a curative instruction, the court, in effect, gave the jury an incorrect impression that [the defendant's] behavior off the witness stand was evidence in this instance, upon which the prosecutor was free to comment."
Id . at 796.
In United States v. Wright , the DC Circuit reasoned:
"Unless and until the accused puts his character at issue by giving evidence of his good character or by taking the stand and raising an issue as to his credibility, the prosecutor is forbidden to introduce evidence of the bad character of the accused simply to prove that he is a bad man likely to engage in criminal conduct.
"This basic principle cannot be circumvented by allowing the prosecutor to comment on the character of the accused as evidenced by his courtroom behavior. That the jury witnesses the courtroom behavior *475 in any event does not make it proper for the prosecutor to tell them, with the *442 court's approval, that they may consider it as evidence of guilt."
489 F.2d 1181, 1186 (D.C. Cir. 1973).
We find the reasoning of the Ninth and DC Circuits to be more persuasive. By strictly differentiating what is evidence from what is not, trial courts can more meaningfully focus the jury on its role as factfinder. Further, should a party wish to move to admit courtroom behavior into the evidentiary record, the formality of an evidentiary offer, objection, and acceptance would provide the parties an opportunity to litigate the admissibility, including whether or not such behavior is improper character evidence. See State v. Cox , 272 Or. App. 390, 409-10, 359 P.3d 257 (2015) (reversing the denial of a motion for a new trial based on prosecutors closing argument that relied on facts not in evidence for character purposes).
Discretion "refers to the authority of a trial court to choose among several legally correct outcomes." State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, the trial court did not abuse its discretion." Id. However, where a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome. See State v. Mayfield , 302 Or. 631, 645, 733 P.2d 438 (1987). In this case, it was not within the trial court's permissible range of discretion to permit a closing argument that relied upon facts not in evidence. Accordingly, the trial court abused its discretion when it failed to strike the prosecutor's argument in the face of a timely objection.
We turn now to whether the error harmed defendant. Despite error, we will nevertheless affirm a judgment if there is "little likelihood that the error affected the jury's verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). In approaching the question of harm, we are guided by the Supreme Court's treatment of this issue in Cler, 349 Or. at 490-91, 245 P.3d 642.
*443 In Cler , the Supreme Court first noted that an attorney statement concerning facts not in evidence is particularly problematic when it comes in the context of closing argument:
"Although not evidence themselves, closing arguments are an integral part of trial that can alter the result of the trial:
"* * * * *
"It is through closing arguments that the attorneys are able to fully frame the issues and remind the jury of evidence that they may have heard days earlier. Further, arguments give the attorneys a chance to explain the evidence in narrative form. That narrative function of arguments-the opportunity to tell the story of the case-is essential to effective advocacy, and the ability to do so can alter the jury's understanding of the evidence and ultimately change the outcome of a given case."
Cler , 349 Or. at 490-91, 245 P.3d 642 (relying on Charles v. Palomo , 347 Or. 695, 705, 227 P.3d 737 (2010) (internal quotation marks omitted)).
Second, the court noted that uniform instructions informing the jury that lawyer arguments are not evidence does not cure the problem. As the court noted:
"The trial court's admonition to the jury that the lawyers' arguments 'are not evidence' does not overcome that problem, in our view. That admonition operates on the assumption, noted above, that the record evidence frames the context within which lawyer argumentation permissibly may occur. The court's admonition helps the jury understand that it must not confuse a lawyer's advocacy about the record with the actual witness testimony and other evidence that the court has admitted into the record in accordance with the rules of evidence. The comments of defense counsel to the jury here, however, did not simply convey her view of the record evidence."
Cler , 349 Or. at 492, 245 P.3d 642.
Both of those concerns are equally present in this case. Not only did the prosecutor refer to facts not in evidence, he did so *476 repeatedly, expressly asking the jury to consider those facts as evidence in rendering its verdict. See *444 Cox , 272 Or. App. at 410, 359 P.3d 257 (finding reversible error in closing argument that employed improper comments that were "not subtle, isolated, or fleeting"); State v. Reineke , 266 Or. App. 299, 311, 337 P.3d 941 (2014) (the court concluded that repeated improper comments by prosecutor in a closing argument made it "highly likely that the jury drew an adverse inference" of defendant's guilt). And, as in Cler , the statements in this case went beyond merely characterizing the evidentiary record. Rather, they fundamentally altered what the jury would perceive the evidentiary record to be. Given the repeated invitations for the jury to render a decision based on a record that was not, in fact, the evidentiary record before it, we cannot conclude that there was little likelihood that the error affected the verdict.
Reversed and remanded.