Argued and submitted September 30, reversed and remanded November 4, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHERRI LYNN MOREHEAD,
*Defendant-Appellant.*

Washington County Circuit Court
18CR34758; A170012

477 P3d 462

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894(2)(a). On appeal, defendant assigns error to the trial court's failure either to sustain defendant's objection to the state's rebuttal closing argument, which defendant contends referred to facts not in evidence, or to grant a mistrial based on the state's rebuttal argument. *Held*: The state's rebuttal argument impermissibly referred to a material fact not in evidence, and the trial court abused its discretion when it overruled defendant's objection to that argument. There is more than a little likelihood that the impermissible reference affected the jury's verdict, and, accordingly, the trial court's error was not harmless.

Reversed and remanded.

Theodore E. Sims, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patricia Rincon, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Beth Andrews, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Reversed and remanded.

**HADLOCK, J. pro tempore**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine. In two assignments of error, she challenges the trial court's failure either to sustain defendant's objection to the state's rebuttal closing argument, which defendant contends referred to facts not in evidence, or to grant a mistrial based on the state's rebuttal argument. As explained below, we agree with defendant that the state's rebuttal argument impermissibly referred to facts not in evidence and that the trial court abused its discretion when it overruled defendant's objection to that argument. Because we also conclude that the error was not harmless, we reverse and remand. Given that disposition, and because defendant requests the same relief—reversal and remand—in association with both of her claims of error, we need not separately consider whether the trial court erred in denying defendant's motion for a mistrial. *See State v. Brunnemer*, 287 Or App 182, 184, 189-90, 401 P3d 1226 (2017) (implicitly taking that approach in analogous circumstances).

The facts related to the trial court's rulings are procedural and, for purposes of our analysis, undisputed. We set out additional evidence as it was presented at trial, because that context informs our ultimate ruling on whether the trial court's error in overruling defendant's objection to the state's rebuttal closing argument was harmless. *See State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003) (explaining that the harmless-error analysis must consider "[t]he context of the legal error" in determining "whether there was little likelihood that the error affected the verdict").

Two sheriff's deputies encountered defendant at a bus stop, saw that she had a duffle bag with her, and obtained her consent to search that bag. The search revealed, among other things, a cigarette pack that contained three small baggies that held methamphetamine. Defendant was charged with unlawfully and knowingly possessing a usable amount of methamphetamine.

In pretrial motions, the parties discussed the state's plan to introduce evidence about why the deputies had initiated contact with defendant. Specifically, the prosecutor

wished to introduce evidence of a report that a bus driver had made about activity at the bus stop. According to the prosecutor, "an unknown civilian witness" had told the bus driver that a person "was smoking methamphetamine at a bus stop, openly, middle of the day, smoking meth at the bus stop." The bus driver then saw a person (later identified as defendant) "smoking at the bus stop" and the driver called dispatch, which led to the deputies approaching defendant.

Defendant argued that the deputies should not be permitted to testify as to the substance of the call that the bus driver had made, particularly when it became clear that the state was not going to call the bus driver as a witness. Defendant suggested that "all the officers need to do is say they were responding to a 911 call and so they went to the bus stop." After some discussion, the court ruled that the deputies could testify only that they had received "a 911 call that's suspicion of drug activity" at the bus stop, involving a person with the description they had been given.

At trial, the two deputies testified in accordance with the court's ruling. Deputy Lewis testified that he had responded to a call about "suspected drug activity at a bus stop" involving a woman wearing a pink shirt who was "sitting at the bus stop [and] appeared to be smoking." Deputy O'Brien similarly testified that he and Lewis were responding to a report of "possible drug activity."

The deputies also testified about what happened after they approached defendant at the bus stop. Lewis asked defendant if she had been smoking, and she indicated that she had been smoking "tiny cigarettes." Lewis told defendant that she was not allowed to smoke at a bus stop, and he asked if she had been using methamphetamine. Defendant responded that she had not used methamphetamine that day, although she had in the past. According to Lewis, defendant was cooperative, although she was fidgety throughout the encounter and "[k]ind of couldn't hold still." Defendant had a duffle bag with her and, in response to a question from Lewis, she said that all of the items in the bag were hers.

O'Brien asked defendant for consent to search her bag, which she gave. At one point, Lewis asked defendant if

O'Brien was going to find anything illegal in the bag, and, according to Lewis, defendant said that a "meth pipe" was inside. O'Brien's search of the bag revealed a used glass methamphetamine pipe and a cigarette pack that, itself, held three small plastic bags containing methamphetamine. Lewis testified that defendant also had a butane lighter of a type commonly used to melt methamphetamine for smoking in a pipe, but he could not recall whether that was in the bag or on defendant's person.

Defendant told Lewis that the methamphetamine was not hers. She said that she had found the cigarette pack, picked it up, and did not want to throw it away. Lewis arrested defendant for possession of methamphetamine. The substance in the baggies from defendant's duffel bag later tested positive for methamphetamine.

Defendant testified on her own behalf. She acknowledged having been at the bus stop and testified that she had been smoking a cigarette. When she arrived at the bus stop that morning, defendant said, she found a bag of food and juice in unopened packages, as well as cigarettes. Defendant put the bag, including the cigarettes, inside her duffle bag.

Defendant testified that the deputies were "very nice and pleasant"; nonetheless, she was not comfortable with their questions. She consented to the deputies searching her duffle bag because she "had nothing to hide." Defendant acknowledged having told the deputies that a pipe was in her bag (she had seen the pipe inside the bag with the food and cigarettes she found), but she did not recall having called it a meth pipe. Defendant testified that she had not known that methamphetamine was inside the cigarette pack, which she had not looked inside because she had her own cigarettes. Defendant also testified that she had not used methamphetamine since she tried it in 2001, and she explained that she used the butane lighter for lighting cigarettes because "it doesn't blow out all fast like a regular lighter would."

In closing argument, the prosecutor emphasized that the real question for the jury was whether defendant knew that she possessed methamphetamine. The prosecutor urged the jurors not to "suspend disbelief" or to "ignore

the paraphernalia" that defendant had "and how she was acting and what she told the deputies." In her closing argument, defense counsel emphasized that the question for the jury was not whether defendant had made a mistake in keeping the methamphetamine pipe; rather, the question was whether the state had proved beyond a reasonable doubt that defendant knew about the methamphetamine in the cigarette pack. In arguing against the persuasiveness of the state's evidence, defense counsel suggested that the deputies had not done a thorough investigation and that they had acted on assumptions, including when they went to the bus stop:

> "There is an assumption that drug-related activities happening at the bus stop, smoking-related activity was happening at the bus stop probably because [defendant] was homeless, and somebody called it in, as what usually happens with homeless people in places they're not supposed to be."

In rebuttal, the prosecutor responded to defense counsel's assertion about "assumptions" and, in doing so, made the statements that are the subject of this appeal:

> "[PROSECUTOR]:   But sit back for just a second, what assumptions were wrong? Police officers responded to a report, it was stated. The report was, *'Someone was smoking meth at the bus stop'*—
>
> "[DEFENSE COUNSEL]:   Objection, Your Honor. Facts not in evidence.
>
> "[PROSECUTOR]:   That is in evidence.
>
> "[DEFENSE COUNSEL]:   That was not.
>
> "THE COURT:   Suspicious. It's argument. It's overruled. Go ahead.
>
> "[PROSECUTOR]:   Okay. That can't be offered for the truth of the matter asserted. You can't know that that's what was seen, what was happening, we don't have that person. There's no such (indiscernible).
>
> "[DEFENSE COUNSEL]:   Your Honor, I'd ask for a limiting instruction then.
>
> "THE COURT:   We'll deal with that. Go ahead, [prosecutor]."

(Emphasis added.) The prosecutor then urged the jury to find that defendant knew that she was in possession of methamphetamine.

After the jury started deliberating, defendant requested a mistrial based on the prosecutor's reference, in rebuttal, to somebody having reported that a person was smoking methamphetamine at the bus stop. Defense counsel argued that no such testimony had been given. In response, the prosecutor argued that defendant had suggested that somebody had been "essentially making assumptions about her, picking on her, that they were calling someone in as a homeless person"; he argued that the state was entitled to counter that by showing "that no one was picking on her" and that the deputies went to the bus stop because they were responding to a call. The prosecutor also argued that it was "fair in argument to * * * consolidate" the evidence about "illicit drug activity" and the deputies' questions to defendant about whether she had been smoking methamphetamine. He contended that he permissibly "consolidate[d] those two things together into what we all know what was meant."

In response, defense counsel agreed that the prosecutor could counter her "assumptions" argument. However, she argued, the prosecutor could not do so by presenting facts not in evidence—facts that had been excluded from evidence as a result of defendant's pretrial motions.

The court denied the mistrial motion, stating that the prosecutor had essentially "issued his own curative instruction telling them that they can't use it for the truth of the matter asserted." The court suggested that it would give its own limiting instruction if the defense wanted one. At that point, however, defense counsel expressed concern that such an instruction would simply highlight the issue for the jury. The court agreed, and defense counsel declined to have a limiting instruction given, asserting that the issue "needed to be cured before [the prosecutor] spoke." The jury found defendant guilty and the court entered a judgment of conviction, imposing a probationary sentence.

On appeal, the parties generally reiterate the arguments they made below. In particular, defendant argues that

the trial court abused its discretion when it overruled her objection to the prosecutor having referred, in rebuttal argument, to facts not in evidence. Indeed, defendant appears to suggest that a trial court *always* abuses its discretion if it "allow[s an] argument to stand" that refers to facts not in evidence. Defendant also argues that the error was harmful because the central issue in the case was whether defendant knew about the methamphetamine in her duffle bag, and information that she had been seen smoking methamphetamine was compelling evidence on that point. Defendant argues for similar reasons that the trial court abused its discretion when it denied her mistrial motion. She seeks the same remedy for both claimed errors: reversal and remand for a new trial.

In response, the state asserts that the prosecutor's rebuttal argument did not stray far from the facts in evidence, contending that "the challenged portion of the prosecutor's statement amounts to only a single word—'meth.'" The state points out that deputies had been permitted to testify that they went to the bus stop on a report of suspected drug activity, and it argues that the prosecutor's reference to "meth" therefore "did not significantly affect the force of the prosecutor's argument." In addition, the state argues, the context of the rebuttal argument made it clear that the prosecutor "was not stating a fact about what defendant was actually doing," but was only refuting defendant's argument about "assumptions." Given those circumstances, the state argues, the trial court did not abuse its discretion in overruling defendant's objection or in denying a mistrial motion and—even if the court did err—any error was harmless, particularly given what the state characterizes as "overwhelming evidence of defendant's guilt."

"We review a trial court's decision to overrule an objection to closing arguments for abuse of discretion." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). That is, we determine whether the trial court's decision to overrule the objection was within the range of permissible options available to the court. *See State v. Stull*, 296 Or App 435, 442, 438 P3d 471 (2019) ("Discretion refers to the authority of a trial court to choose among several legally correct outcomes." (Internal quotation marks and

citation omitted.)). "However, where a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome." *Id.*

As the Supreme Court has explained, attorneys generally have "a large degree of freedom" during closing arguments "to comment on *the evidence submitted* and urge the jury to draw any [and] all legitimate inferences from *that evidence.*" *Cler v. Providence Health System-Oregon*, 349 Or 481, 487, 245 P3d 642 (2010) (internal quotation marks omitted; emphases added). But counsel is not free, in closing argument, to "make statements of fact outside the range of evidence." *Id.* at 488 (internal quotation marks and citation omitted). Indeed, "evidence outside the record may not be suggested by any means." *Id.* at 490. That absolute prohibition against referring to facts not in evidence is a statement of law. Accordingly, a trial court's decision to allow a party to make a closing argument that is based on facts not in evidence (by overruling a proper objection) can at least generally be said to flow from a mistaken legal premise—*i.e.*, that such an argument can sometimes be permissible. It follows that a trial court generally abuses its discretion when it overrules a founded objection to a closing argument that refers to facts not in evidence. *See Stull*, 296 Or App at 442 (applying that analysis); *see also Cler*, 349 Or at 490 (trial court abused its discretion when it overruled an objection to an argument based on facts not in evidence).[1]

Here, the prosecutor's rebuttal argument plainly referred to a fact not in evidence—that deputies had responded to a report that "Someone was smoking meth at

---

[1] We ultimately rule that, under the totality of circumstances present in this case, the trial court abused its discretion in overruling defendant's objection to the state's rebuttal argument based on the reference to facts not in evidence. Accordingly, we need not decide whether there are some circumstances in which a trial court could properly overrule such an objection, for example, where the fact not in evidence is immaterial and not prejudicial to the other party (although it might be simpler to say that any error in overruling the objection would be harmless in those circumstances). Hence, in stating that a trial court "generally" will abuse its discretion by overruling a proper objection to a closing argument that refers to facts not in evidence, we assume (without deciding) that there may be exceptions to that general principle.

the bus stop." No witness had testified to such a report; instead, the deputies' testimony on that point had referred only to suspected or possible "drug activity." Lewis did also testify as to having heard that the person suspected of drug activity was "smoking," but that word was used in association with a description of the suspect—not in conjunction with a characterization of her alleged illegal activity—and nothing about it suggested anything other than that the suspect was smoking a cigarette. Moreover, the prosecutor's reference to "smoking meth" was material to the central issue in the case, that is, whether defendant was aware of the methamphetamine she possessed, along with the pipe that she admitted was in her bag.

Nonetheless, the state argues that the prosecutor's reference to a report about a person "smoking meth" was permissible because it refuted defendant's argument, which the state characterizes as having accused the deputies of making "a series of 'assumptions' and investigat[ing] defendant because she was a homeless woman." The state certainly was entitled to counter that argument. However, it was not entitled to refer to facts not in evidence in doing so. *Cf. Cler*, 349 Or at 489 (discussing ways that a party may permissibly obtain recourse against another party's improper argument, *not* including "by remaining silent during the opponent's closing argument, and then resorting to self-help by presenting argument based on facts not in evidence").

The state also suggests that, in context, the jury would have understood that the prosecutor's reference to the report about somebody "smoking meth" was meant only to counter defendant's "assumptions" argument and "was not a factual assertion about what defendant was doing." We are not persuaded. Immediately after the prosecutor stated that police had received a report that "Someone was smoking meth at the bus stop," defendant objected on the ground of "Facts not in evidence." The prosecutor then asserted, incorrectly, that the fact "is in evidence." Defendant again insisted that it "was not." The trial court then overruled defendant's objection. The obvious inference for the jury would have been that the report of "smoking meth" was in evidence and was something they could consider—why

else would the court have overruled defendant's objection? *Cf. State v. Mayo*, 303 Or App 525, 537-38, 465 P3d 267 (2020) (by overruling the defendant's objection to state's argument that "improperly shifted the burden to defendant by inviting the jury to convict [him] for failing to call witnesses to create a reasonable doubt," the trial court "led the jury to believe that defendant had an obligation to call corroborating witnesses to prove his innocence").

The prosecutor's additional statements would not have cured the problem. Immediately following the exchange discussed above, the prosecutor said:

> "Okay. That can't be offered for the truth of the matter asserted. You can't know that's what was seen, what was happening, we don't have that person. There's no such (indiscernible)."

We do not believe that the jury would have understood from those remarks by the prosecutor—not by the court—that it either should disregard the reference to "smoking meth" altogether (because, after all, it was not in evidence), or should consider that reference only for some limited, but unidentified, purpose. We cannot assume that a lay jury would understand what it means for a statement not to be considered "for the truth of the matter asserted" when that legal terminology is not explained and the jury is not told for what purpose it *can* consider the statement.

Indeed, it is difficult for us to understand what, precisely, the prosecutor intended to convey to the jury at that point. Instead, we find it plausible that, as defendant argues, the prosecutor's remarks—particularly the reference to "that person"—may have made the matter worse by suggesting to the jury that, even if the "smoking meth" report was not in evidence "for the truth of the matter asserted," (1) some specific person *had* reported that defendant was smoking methamphetamine, and (2) that person had not been called as a witness. Thus, the prosecutor's remarks decreased any possibility that the jury might have thought that the prosecutor's reference to a report about someone "smoking meth" had merely overstated the deputies' testimony or was asking the jury to infer what the report of suspected drug activity might have been about, based on the testimony before it.

Under the totality of the circumstances—including that the prosecutor's rebuttal closing argument referred to a material fact not in evidence and implied that a missing witness could have testified to that fact—we conclude that the trial court abused its discretion when it overruled defendant's objection to the argument.

We turn to the question of whether the error was harmless in the context of this trial. "Despite error, we will nevertheless affirm a judgment if there is 'little likelihood that the error affected the jury's verdict.'" *Stull*, 296 Or App at 442 (quoting *Davis*, 336 Or at 32). The central question for the jury in this case was whether defendant knew about the methamphetamine that was in her duffle bag. The prosecutor's impermissible reference to a report that defendant had been "smoking meth" related directly to that issue, undercutting defendant's denial of any awareness that she possessed the drug. Even though the prosecutor referred to "smoking meth" only once, that reference was significant, given its compelling relationship to the only seriously disputed question before the jury. No other evidence in the record suggested that defendant had been seen smoking methamphetamine, so the prosecutor's comment cannot be viewed as cumulative of evidence that had been properly admitted at trial. To the contrary, it gave the jury information about defendant's reported drug-using behavior that was completely—and powerfully—different from any other evidence in the record.

Moreover, the trial court's instructions would not have divested the prosecutor's impermissible remark of its power. As the Supreme Court explained in *Cler*, the uniform instruction that lawyer's arguments are not evidence does not cure the problem of a lawyer having referred to facts not in evidence, because that instruction is premised on the understanding that lawyers' arguments are confined to evidence that has been admitted into the record. *Cler*, 349 Or at 492. Thus, notwithstanding that instruction, an argument that refers to facts not in evidence can "fundamentally alter[] what the jury would perceive the evidentiary record to be." *Stull*, 296 Or App at 444. Given the circumstances, it is reasonable to believe that there is more than a little likelihood that that happened here.

Finally, we also conclude that defendant's ultimate decision not to request a limiting instruction regarding the prosecutor's impermissible argument—which would have been delivered after the jury started deliberating—does not undercut her ability to challenge the trial court's decision to overrule her objection to that argument. Under the circumstances, which include the state's failure to identify a permissible basis for the prosecutor's statements (*i.e.*, something that could provide the rationale for a limiting instruction), defendant was not required to request such an instruction.

In sum, we conclude that the trial court abused its discretion when it overruled defendant's objection to the prosecutor's rebuttal closing argument, which referred to facts not in evidence. Given the significance of the prosecutor's impermissible reference to "smoking meth," we conclude that there is more than a little likelihood that the error affected the jury's verdict. Accordingly, we reverse and remand.

Reversed and remanded.