Argued and submitted January 7, 2019, affirmed January 29, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARAI BOAUOD,
*Defendant-Appellant.*

Beaverton Municipal Court
M810290-1; A165054

459 P3d 903

A jury convicted defendant of harassment, ORS 166.065. On appeal, defendant assigns error to the trial court's denial of his motion *in limine* to exclude a video—and include only the audio—of defendant being interviewed in a holding cell about the incident leading to his arrest. He argues that the court abused its discretion in determining that the probative value of defendant's gestures and expressions in the video was not substantially outweighed by the prejudicial effect of the image of defendant behind bars. Requesting plain error review, defendant also assigns error to the court's failure to *sua sponte* declare a mistrial or issue a corrective instruction in response to the state's comments on the credibility of defendant and the victim during its closing argument. Defendant contends that, because the state argued that he lied, he did not receive a fair trial. *Held*: The trial court did not err. As for the motion *in limine*, the court properly balanced the competing interests under OEC 403 and did not abuse its discretion in admitting the video. As for the court's failure to *sua sponte* correct the state's comments on the credibility of the witnesses, it is not beyond dispute that defendant was so prejudiced as to be deprived of his right to a fair trial.

Affirmed.

Francisco R. Ravelo, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Affirmed.

## LAGESEN, P. J.

A jury convicted defendant of harassment, ORS 166.065. On appeal, defendant contends that the trial court (1) erred by denying his motion *in limine* to exclude a video—and include only the audio—of defendant being interviewed in a holding cell about the incident leading to his arrest and (2) plainly erred by failing to *sua sponte* declare a mistrial or issue a corrective instruction in response to the state's comments during its closing argument about defendant's and the victim's credibility. As for the motion *in limine*, we conclude that the court did not abuse its discretion in determining that the probative value of defendant's gestures and expressions was not substantially outweighed by the prejudicial effect of the image of defendant behind bars. As for the court's failure to *sua sponte* correct the state's comments on the credibility of the witnesses, we cannot say that it is "beyond dispute" that defendant was so prejudiced as to be deprived of his right to a fair trial. Accordingly, we affirm.

Defendant's harassment conviction stemmed from an interaction with the victim, M, on a MAX train. According to defendant, M made eye contact with him and smiled as he sat next to her on the train. As the train moved, defendant and M's arms and legs brushed together. Defendant thought that M was showing signs of interest in him, and he felt a "chemical connection." He gave conflicting testimony at trial as to whether he rubbed M's thigh, first admitting then denying it. Defendant also testified that, when M appeared visibly uncomfortable and shifted away from him, he stopped touching her. He then asked for her phone number, and she declined before leaving the train.

According to M, she first noticed defendant sitting next to her when she felt "something strange rubbing on the side of [her] leg." Her phone was out, so she used it to take pictures of defendant with his hand near her leg. She was very uncomfortable, so she waited for the next train stop, moved defendant's hand off of her leg, told him to "stop," and left the train, but not before defendant twice asked for her phone number.

The state charged defendant with one count of harassment. Before trial, defendant moved *in limine* to exclude a video

of the interview police conducted following his arrest, when defendant was in a holding cell. The video was recorded on the interviewing officer's body camera, and it is apparent from the video that defendant is behind bars. In the interview, the officer asks defendant about what happened on the MAX train, including whether defendant touched M and how he touched M. Defendant's accent and the quality of the audio make it so that his responses are difficult to understand at times. In explaining his interaction with M, defendant uses a number of hand gestures in communicating with the officer, including gestures in response to the officer's question about whether defendant touched M. The video also shows defendant's facial expression and body language when the officer asks him if he touched M. In other portions of the video, defendant pauses briefly in audibly communicating to make gestures or move his head from side to side (as if considering how he should answer the officer's questions), and, in those instances, the significance of those pauses—and what those pauses communicate—is only apparent when viewing the video.

In moving to exclude the video, defendant argued that its probative value was low because the interviewing officer would testify at trial, and that it was highly prejudicial because defendant is visibly behind bars in the video, which could lead a jury to conclude that defendant was guilty on an improper basis. The state countered that the video contained the best evidence of defendant's intent during his interaction with M, which would be a central issue in that trial. It added that, during its direct examination of the interviewing officer, the state would clarify that the video does not show defendant in jail, which would mitigate some of the prejudice.

The trial court denied the motion, reasoning that defendant's mannerisms and inflections—all as he spoke about the allegation with which he was charged—were highly probative, particularly because the interview took place shortly after the incident. The court also reasoned that any prejudicial effect would not be very high because the jury would already know that defendant had been arrested and "there's an instruction built in to explain that that is not to be held against him." Additionally, the court noted,

the video would prevent the officer from testifying inaccurately based on misunderstandings likely to have arisen from defendant's heavy accent.

Following the trial court's ruling, defendant then requested that the court allow the jury to only hear the audio of the interview. The court denied defendant's request, reasoning:

> "That's not fair to limit the State's case to just voice when they have—he does move his hands. It's demonstrative. And it's someone who has an accent, and the way he talks and what he says may come across wrong by just hearing it.

> "* * * I don't exactly know what he said during that videotape, but I know that what the officer's going to interpret that he said during that videotape is not as good in evidence for this jury to hear as them actually hearing what he has to say about this.

> "So I just don't—the relative value is, I'm ruling, is extremely high in this situation, and so I am going to allow it."

At trial, immediately before showing the video to the jury, the court instructed the jury that it could not consider the image of defendant in a holding cell as evidence of his guilt. Instead, the court elaborated, the jury could only use defendant's statements, mannerisms, and actions as evidence.

The jury convicted defendant of harassment. On appeal, he assigns error to the trial court's denial of his motion *in limine* to exclude the videotaped interview and to the court's failure to *sua sponte* declare a mistrial or correct the state's closing argument when it commented on the credibility of defendant and M (the facts of which we set out below). The state argues that the court did not abuse its discretion in admitting the video and that the state permissibly commented that the jury should make inferences about the credibility of the witnesses based on evidence in the record.

*Motion in Limine to Exclude Videotaped Interview.* Defendant first assigns error to the trial court's denial of his motion *in limine* to exclude the videotaped interview. He argues that the image of defendant behind bars prohibited

its admission under OEC 403, particularly because the court denied his request to play only the audio. The state contends that the court did not abuse its discretion in admitting the video over defendant's OEC 403 objection, and, further, that it did not need to determine the probative value of the video alone—in response to defendant's request that only the audio be played to the jury—in making its ruling. For the reasons that follow, we conclude that the court did not abuse its discretion and therefore affirm.

As a threshold question, we must determine whether to review the trial court's decision (1) to admit the video instead of excluding it, as the state requests, or (2) to admit the entire video instead of only the audio portion, as defendant requests. The state argues that OEC 403 does not, by its terms, require courts to make additional rulings on requests to alter the evidence at issue. However, defendant assigns error to the court's second decision, and the court ruled on that request, so we will review that ruling. *See* ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged."). The state cites no authority for the proposition that it is inappropriate to consider a ruled-on proposal to modify the evidence at issue in an OEC 403 balancing test. We routinely review rulings of the trial courts where, as here, an appellant's challenge is preserved and correctly presented to us in the form required by ORAP 5.45. Further, the fourth step of the balancing test in *State v. Mayfield* contemplates that a court, when requested, make an individualized determination of what portions of evidence should be admitted and what portions should be excluded. 302 Or 631, 645, 733 P2d 438 (1987) ("[T]he fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."). Thus, the question before us is: Did the trial court abuse its discretion in determining that the probative value of the video portion of the interview was not substantially outweighed by the prejudicial effect of the image of defendant in a holding cell?

Under OEC 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" "Although we examine whether

the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion." *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005). "In evaluating a trial court's discretionary ruling under OEC 403, our role is to assess whether the court's decision falls within the range of legally permissible choices." *State v. Gibson*, 299 Or App 582, 589, 451 P3d 259 (2019). Absent a claim that a trial court has made a legal or factual error in making a discretionary determination under OEC 403, to determine whether the court's evidentiary ruling represents an abuse of discretion, we examine whether the court "exercise[d] its discretion to an end not justified by, and clearly against, evidence and reason." *State v. Moles*, 295 Or App 606, 620, 435 P3d 782, *rev den*, 365 Or 194 (2019).

First, the probative value: "The probative value of evidence is a function of two variables: the degree to which evidence is relevant to prove or disprove an issue and the extent to which that issue is material to the resolution of the case." *State v. Anderson*, 363 Or 392, 407, 423 P3d 43 (2018). In this case, a central issue was defendant's intent when he touched M. The only direct evidence of the incident was the competing accounts provided by defendant and the victim, so the jury's resolution of the issue was likely to turn primarily on its perception of defendant and M. The video shows defendant, almost immediately after the encounter on the MAX with M, responding to the allegations of harassment and talking about his mental state during the incident. Under those circumstances, it was within the range of reason for the trial court to conclude that the evidence of the interview was highly probative.

The trial court determined further that the probative value of the video portion of the interview was high for several reasons. First, as the court noted, defendant is demonstrative in the video; he uses his hands when he speaks, demonstrating where M was sitting in relation to him, showing how they were touching each other, and modeling what the officer might have meant by "touch." In other words, defendant communicates physically, something that would not be apparent to the jury from the audio alone, such

that excluding the video of the interview would leave the jury with an incomplete understanding of it. Second, the video shows defendant's demeanor, body language, and, at times, facial expressions when confronted with the allegations, including defendant's facial expression after being asked outright whether he touched M's thigh, all of which reasonably could inform the jury's assessment of defendant's credibility. Third, defendant's accent increases the risk that the jury would misunderstand him if it were only allowed to listen to the interview. The court's determination that the probative value of the video portion of the interview was high was within the range of reason.

Now, the prejudicial effect: "Evidence is unfairly prejudicial when it has an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one, and when the preferences of the trier of fact are affected by reasons essentially unrelated to the persuasive power of the evidence to establish a fact of consequence." *State v. Lipka*, 289 Or App 829, 832, 413 P3d 993, *rev den*, 362 Or 860 (2018) (internal quotation marks omitted). Here, the trial court recognized—correctly—that the video aspect of the interview did present a danger of unfair prejudice—certainly, seeing defendant behind bars could suggest to a jury that defendant was dangerous and that it should (improperly) convict defendant for that reason. But, as the court also recognized, the jury would be aware that defendant had been arrested, and the jury would hear from the interviewing officer that the video did not show defendant in jail, but that he was instead in a holding cell. The court would also provide a curative instruction on how the jury should not use defendant's arrest as evidence of his guilt (an instruction that the court delivered as promised). That assessment that the prejudicial effect of the image of defendant in a holding cell was relatively low is also within the range of reason.

In this case, therefore, the trial court properly balanced the competing interests under OEC 403 and did not abuse its discretion in admitting the video. That is, the court's determination that defendant's gestures, expressions, and mannerisms so significantly added to the probative

value of the audio of defendant's interview that that value was not substantially outweighed by the prejudice of defendant being seen in a holding cell was within the range of the court's permissible choices. We emphasize, however, that this case, as is typical with cases involving discretionary decisions, allowed for discretion to be exercised in different ways. Had the court concluded that the image of the bars substantially outweighed the probative value of the video portion of the video, we would not be in a position to displace that decision either under the circumstances of this case. *See Gibson*, 299 Or App at 589 ("[T]he trial court also would have acted within its discretion had it reached a contrary conclusion about its admissibility, but, on this record, that was not the only permissible legal outcome available to the court.").

      *Failure to Sua Sponte Declare a Mistrial or Issue a Corrective Instruction.* Defendant also assigns error to the trial court's failure to *sua sponte* declare a mistrial or issue a corrective instruction in response to the state's comments on defendant's and M's credibility. In particular, defendant contends that he did not receive a fair trial because during the state's rebuttal it argued:

> "You can make inferences from the facts that you've heard. You can use direct and circumstantial evidence. You can tie things together to reach conclusions if you find them believable. So what are these bread crumbs? Where are these clues that we can point to that shows [defendant's] intention?

> "Well, firstly, there were his words. He wanted to connect with a lady. He did that by touching her leg. He intended to do that. How else do we know that he intended to harass her by making that offensive physical contact? *He lied about it.* He's trying to claim today, 'Oh, I never touched her. I never touched her that way.'

> "And when he had an opportunity to clarify that same exact question in the video that day, he wouldn't answer.

> "If you remember, he would say, 'Well, I don't want to lie'— and then talk about something else. *He had an opportunity to tell the truth then, he had an opportunity to tell the truth today and he didn't.*

"*[M] told you the truth*. And you have the photos to back it up."

(Emphases added.) Defendant requests plain-error review because he did not object or otherwise preserve the matter for appeal. The state contends that the trial court did not plainly err because, in the context of the state's rebuttal argument, it was permissibly arguing that the jury should infer, based on the evidence, that defendant had lied and M had told the truth.

We have stated that, "[i]n general, in presenting closing arguments to the jury, counsel has a large degree of freedom to comment on the evidence submitted and urge the jury to draw any and all legitimate inferences from that evidence." *State v. Stull*, 296 Or App 435, 439, 438 P3d 471 (2019) (internal quotation marks and second brackets omitted). Accordingly, counsel may argue that the jury should infer that a witness is credible based on the evidence in the record, so long as counsel does not express his or her personal opinion of the witness's credibility. *State v. Sperou*, 365 Or 121, 135, 442 P3d 581 (2019). A trial court's error is plain if it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). A court therefore plainly errs in failing to grant a mistrial *sua sponte* "only if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996), *cert den*, 520 US 1233 (1997).

We recently affirmed under similar circumstances in *State v. McCurry*, 300 Or App 666, 455 P3d 1014 (2019), where it was not beyond dispute that the defendant was so prejudiced as to have been denied a fair trial, and *McCurry* dictates the same result here.

In *McCurry*, a robbery case, the prosecutor made multiple comments during closing argument that the state's witnesses' versions of events were credible and that the defendant's version was not. *Id.* at 667-68. As to the victim, the prosecutor argued that "[t]here's no way this kid was making up the story. He's as—as matter of fact about things

as you can possibly be." *Id.* at 668 (brackets in original). Regarding another witness, the prosecutor argued, "[T]his kid—I mean, I hope you agree with me on this, that—that there's really no way to credibly argue that he wasn't telling you the truth." *Id.* In commenting on the defendant's credibility, the prosecutor argued:

> "Guilty people hide from the cops, right? Now, if he wasn't in there, if they were knocking on an empty apartment door, right, what does that mean?
>
> "Again, I'll answer this one for you, too. It means he's lying. It means he lied under oath to you."

*Id.*

On appeal, we concluded that, even assuming that the prosecutor's closing argument was improper, it was not beyond dispute that it was "so prejudicial as to require the trial court to declare a mistrial *sua sponte.*" *Id.* at 670. In doing so, we highlighted the deferential standard of review that we must apply when asked to review for plain error the trial court's failure to grant a mistrial or provide a curative instruction *sua sponte*. *See also State v. Cheney*, 171 Or App 401, 404, 410-12, 16 P3d 1164 (2000), *rev den*, 332 Or 316 (2001) (concluding that the trial court did not err in failing to direct a mistrial *sua sponte* even though the state's assertion during closing argument that it could only recommend prosecution on "true" cases "went well beyond the bounds of proper argument"); *State v. Parker*, 235 Or 366, 376-78, 384 P2d 986 (1963) (concluding that the prosecutor's remark that its witness was "telling the truth. We wouldn't have her if she wasn't" was not reversible error). On the facts of this case, we cannot conclude that it is beyond dispute that defendant did not receive a fair trial. Accordingly, we affirm.

Affirmed.