Argued and submitted February 12, 2019, reversed and remanded May 28, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERICK ALEXIS GUTIERREZ,
*Defendant-Appellant.*

Washington County Circuit Court
16CR72603; A164536

466 P3d 75

Defendant was convicted of one count of harassment, ORS 166.065, based on having subjected M to offensive physical contact. On appeal, defendant argues that his confrontation rights under the Sixth Amendment were violated when the trial court allowed a police officer to testify at trial to certain out-of-court statements by M—who did not testify—to the effect that defendant had "punched" her and caused her pain of 8 on a scale of 10. When defendant objected to the officer's testimony, the state argued that defendant had "opened the door" during cross-examination, and the trial court agreed and overruled defendant's objection. *Held*: The trial court erred in overruling defendant's confrontation objection and admitting M's out-of-court statements. The term "opened the door" is ambiguous, but, in this context, the court appears to have admitted the testimony under the general concept of "opening the door," not the narrower curative admissibility doctrine, notwithstanding the parties' arguments on appeal regarding the curative admissibility doctrine. Even if defendant "opened the door" in the general sense, it was error under the Sixth Amendment to admit the out-of-court statements, and, on this record, the error was not harmless.

Reversed and remanded.

Theodore E. Sims, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____
* Egan, C. J., *vice* Hadlock, J. pro tempore.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Defendant was convicted of one count of harassment, ORS 166.065. On appeal, he argues that the trial court erred in allowing a police officer to testify to certain out-of-court statements by the victim, who did not testify at trial, over defendant's objection that it violated his confrontation rights. The state argues that the trial court properly admitted the statements under the curative admissibility doctrine. We agree with defendant that the trial court erred in admitting the statements and that the error was not harmless. Accordingly, we reverse and remand.[1]

## FACTS

We first describe the evidence admitted without objection, to provide context for the evidence to which defendant objected.

Defendant and M were in a relationship and have two children together. The incident at issue occurred after defendant and M separated. M and her sister V drove to defendant's house to pick up the children. While there, defendant and M got into a dispute. V called 9-1-1 as she, M, and the children drove away from defendant's house. At the beginning of the call, V told the dispatcher three times that defendant had "hit" M, but she insisted that M was "fine" and did not need medical care. Near the end of the call, V described what happened as defendant having "reache[d] out to punch [M] in the face." Officer Hernandez responded to the 9-1-1 call and, as described more later, spoke with M and V and, separately, defendant.

Defendant was subsequently charged with felony fourth-degree assault, constituting domestic violence, ORS 163.160(3), for causing "physical injury" to M in the presence of a child, and harassment, ORS 166.065, for subjecting M to "offensive physical contact."[2] The key issue at trial

---

[1] Given our disposition, we do not reach defendant's second assignment of error, which pertains to a jury instruction that may or may not be given if he is retried, or his third and fourth assignments of error, which pertain to attorney fees and a no-contact order included in the judgment of conviction.

[2] Defendant was also charged with an unrelated third crime, which was tried to the bench and resulted in an acquittal. Because the third charge has no bearing on the appeal, we omit it from our discussion.

was whether defendant had hit M during the argument. M did not appear at trial and was deemed unavailable, so the state's only witnesses were V and Hernandez.

V testified under subpoena. Notwithstanding her statements to the 9-1-1 dispatcher, V denied having seen defendant hit M. She said that she did not really remember the incident or want to remember it. She testified that she had "assumed" that defendant hit M, because she saw his arm "come out" from somewhere, but that she did not actually see defendant hit M and did not know if he "really hit" her. During the incident, V was "just scared," and the children and M were crying, so it was a "hectic moment." V claimed not to remember when M had been crying exactly, noting that the children were crying too. V also testified that, although she remembered M saying that "it hurt," she did not know what M had meant.

Hernandez testified on direct that, when he responded to the call, M appeared scared and was upset and crying. He did not see any "serious injuries" on M, but he did see red speckles on the left side of her face and her chin, which he considered a "physical injury." (Photos that Hernandez took of M's face were admitted at trial.) Hernandez further testified that, at the scene, V told him that defendant had punched M in the face with a clenched fist and that M had started crying. Hernandez then went to speak to defendant, who admitted to arguing with M but denied hitting her.

On cross-examination, defense counsel asked Hernandez whether he had observed any indications that M was in pain on the day of the call, limiting his questions—with one exception—to Hernandez's own observations:

"[DEFENSE COUNSEL]: In this case, your report notes only that you saw a slight redness on [M], correct?

"[HERNANDEZ]: Yes.

"[DEFENSE COUNSEL]: And so if you had noticed things like wincing in pain, that would be in your report?

"[HERNANDEZ]: Yes.

"[DEFENSE COUNSEL]: Tenderness would have been in your report?

"(No audible response.)

"[DEFENSE COUNSEL]:   If she was touching it and it was tender, or you touched it and she said it was tender, that would be in your report?

"[HERNANDEZ]:   If she told me that, yes.

"[DEFENSE COUNSEL]: Okay. Now, if you had noticed she had trouble speaking, that would be in your report?

"[HERNANDEZ]:   Yes.

"[DEFENSE COUNSEL]:   If she had trouble using her jaw, that would be in your report?

"[HERNANDEZ]:   Yes.

"[DEFENSE COUNSEL]:   [T]rouble using her jaw was not in your report, correct?

"[HERNANDEZ]:   Correct.

"[DEFENSE COUNSEL]:   Trouble talking was not in your report, correct?

"[HERNANDEZ]:   Correct."

Defense counsel then asked about Hernandez's observations of M ten days later, when he saw her at the grand jury proceedings, eliciting testimony that Hernandez had not noticed any bruising, swelling, trouble speaking, or trouble smiling and that he would have put those things in his report if he had noticed them.

The testimony in dispute occurred on redirect. On redirect, the prosecutor asked Hernandez whether he had asked M on the day of the incident about her pain and if she had responded. Hernandez answered both questions affirmatively. When the prosecutor asked what M had said about her pain, defendant objected on hearsay grounds. The state responded that defendant had "opened the door by his questioning of her injuries." Defendant replied that his "question was specifically about touching it, if it was tender to the touch." At the court's request, the prosecutor re-asked the question, and the following exchange occurred:

"[PROSECUTOR]:   *** What was that statement about the injury in terms of her pain?

"[HERNANDEZ]:   She said it was an 8 at the time.

"[DEFENSE COUNSEL]: Again, objection, Your Honor.

"THE COURT:   Statement of present sense impression. Overruled.[3]

"[DEFENSE COUNSEL]:  And still a confrontation issue here, Your Honor.

"[PROSECUTOR]:   Your Honor, I believe he's the one that opened the door about the injury. His whole point of cross-examination was that there was no injury that he observed.

"THE COURT:   Agreed. Go ahead.

"[PROSECUTOR]:   So what did she say her level of pain was?

"[HERNANDEZ]:   So she said her level of pain, from a scale of 1 to 10, 1 being no pain, 10 being excruciating pain, at the time of the incident it was an 8 when she got punched.

"[PROSECUTOR]:   Okay.

"[HERNANDEZ]:   And then when I asked her at that moment, I said, 'What is your pain now?' She said it was still an 8 around her jaw."

After the close of the state's case, defendant testified on his own behalf. Defendant admitted that he had argued with M but denied that he had hit her.

The jury acquitted defendant of fourth-degree assault but found him guilty of harassment.[4] The verdict on the harassment charge, a Class B misdemeanor, was 10-2.[5] Defendant appeals the resulting judgment.

---

[3] Although defendant does not challenge this ruling on appeal, we note that the trial court may have intended to rule that M's statement was an "excited utterance" under OEC 803(2), rather than a "present sense impression," as the latter hearsay exception does not exist under Oregon law. *See* Legislative Commentary to OEC 803, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.01[2] (5th ed 2007) at 720-21 (explaining decision not to adopt federal "present sense impression" exception to hearsay rule).

[4] Given the combination of verdicts, the jury presumably found that defendant had hit M but not physically injured her.

[5] The trial court polled the jury on the record. The poll was 10-2, although the court misstated it as 11-1. Defendant describes the verdict consistently with

### ANALYSIS

Defendant contends that the trial court erred in overruling his objection to Hernandez's testimony regarding M's out-of-court statements about her pain level being an "8" when she "got punched" and still an "8 around her jaw" at the time of questioning. Specifically, defendant argues that allowing that testimony violated his right to confrontation under the Sixth Amendment to the United States Constitution, even if it was otherwise admissible under a hearsay exception. (Defendant does not challenge the trial court's ruling that the testimony came within a hearsay exception.) The state responds that no Sixth Amendment violation occurred because the curative admissibility doctrine permitted the admission of the statements.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), the United States Supreme Court announced a new interpretation of that constitutional provision, rejecting its prior interpretation. Under *Crawford*, if a hearsay statement admitted against a defendant in a criminal trial is "testimonial" in nature, the Sixth Amendment Confrontation Clause applies, and admission of the statement is prohibited unless either (1) the declarant appears at trial, or (2) the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. *Davis v. Washington*, 547 US 813, 821, 126 S Ct 2266, 165 L Ed 2d 224 (2006). "Conversely, if a hearsay statement is not 'testimonial,' then the Sixth Amendment Confrontation Clause does not apply." *State v. Cook*, 340 Or 530, 542, 135 P3d 260 (2006). Whether the admission of a hearsay statement violated the Sixth Amendment is a question of law. *State v. Jackson*, 187 Or App 679, 681, 690 P3d 722 (2003).

Defendant argues that M's statements to Hernandez about her pain level were "testimonial" in nature, the state does not contend otherwise, and we agree that they were.

---

the poll, and the state does not contest that it was 10-2. Because defendant was convicted of a Class B misdemeanor, the nonunanimous verdict does not implicate the Sixth Amendment issue recently decided in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020).

*See State v. Camarena*, 344 Or 28, 41-42, 176 P3d 380 (2008) (complainant's statement to investigating officers that the defendant had struck her in the eye was testimonial); *State v. Mendoza-Lazaro*, 225 Or App 57, 61, 200 P3d 167 (2008) (domestic violence victim's statements to police that her children had witnessed the defendant assault her were testimonial); *State v. Graves*, 224 Or App 157, 166, 197 P3d 74 (2008), *rev den*, 346 Or 213 (2009) (police officer's questions to domestic violence victim were designed to establish past events relevant to a later prosecution, so the victim's answers were testimonial). And it is undisputed that, although M was unavailable at trial, defendant had not had a prior opportunity to cross-examine her. *See Davis*, 547 US at 821 (testimonial hearsay may be admitted without violating the Sixth Amendment if the declarant is unavailable at trial *and* the defendant had a prior opportunity to cross-examine her).

        That would normally end the Sixth Amendment analysis, requiring us to conclude that defendant's Sixth Amendment right was violated by the admission of M's out-of-court statements to Hernandez about her pain level. In this case, however, the state argues that the admission of the statements did not violate the Sixth Amendment, because the trial court properly applied the "curative admissibility doctrine" when it ruled that defendant had "opened the door" during his cross-examination of Hernandez. Under the curative admissibility doctrine, "where one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, presumably upon the same fact, subject matter or issue." *Wynn v. Sundquist*, 259 Or 125, 136, 485 P2d 1085 (1971).

        As a threshold matter, we consider whether the curative admissibility issue is properly before us. In his opening brief, defendant preemptively addresses that issue, describing the state's successful argument to the trial court that he "opened the door" as "an apparent reference to the curative admissibility doctrine" and arguing against that doctrine's applicability. In response, the state fully embraces the notion that the trial court ruled on that basis, asserting

in its answering brief, that, during trial, "the state *indicated* that it was relying on the curative admissibility doctrine for the admission of the hearsay statement" (emphasis added); "[d]efendant did not counter the state's responsive argument relying on the curative admissibility doctrine"; and "the trial court admitted [M's statements to Hernandez] under the curative admissibility doctrine."

It is not at all clear, however, that the trial court actually relied on the curative admissibility doctrine in ruling on defendant's objection. The state did not mention that doctrine in the trial court, saying only that defendant had "opened the door," nor did the trial court mention it, saying only that it "agreed" with the state. On appeal, the state treats "opened the door" as unambiguous shorthand for the curative admissibility doctrine. *See State v. Walker*, 350 Or 540, 550, 258 P3d 1234 (2011) ("Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated shorthand references suffice to put all on notice about the nature of a party's arguments."). The state cites no authority for it being unambiguous shorthand, however, and there is reason to believe that it is not.

We recently addressed a similar issue in a case where the trial court ruled that the defendant had "opened the door" to certain questions, the parties disagreed on appeal whether the trial court had meant to invoke the curative admissibility doctrine, and we concluded that the trial court was referring to the more general concept of having "opened the door," not the specific doctrine of curative admissibility. *State v. Apodaca*, 291 Or App 268, 274-75, 420 P3d 670 (2018). Also, at least one prominent commentator has described the phrase "opened the door" as inherently vague: "The courts frequently invoke the vague expression 'open[ing] the door,' resulting in blurring the distinctions between curative admissibility and related doctrines such as specific contradiction impeachment." Edward J. Imwinkelried, *Clarifying the Curative Admissibility Doctrine: Using the Principles of Forfeiture and Deterrence to Shape the Relief for an Opponent's Evidentiary Misconduct*, 76 Fordham L Rev 1295, 1296 (2007).

Context is therefore critical to determine what a trial court meant in a given situation in ruling that a party "opened the door" on a particular subject. As explained in *Apodaca*, the general concept of "opening the door" applies whenever one party opens the door on a certain subject and the other party seeks to counter or impeach that evidence, whereas the curative admissibility doctrine applies more narrowly to circumstances in which one party elicits *inadmissible* testimony and the other party is permitted to counter it with otherwise inadmissible testimony. 291 Or App at 274-75.

In this case, as in *Apodaca*, it appears that the trial court's ruling was based on the more general concept of "opening the door," not the curative admissibility doctrine on which the state now relies on appeal.[6] On appeal, the state focuses on a single cross-examination question, when defense counsel asked a follow-up question about tenderness phrased in such a way that it arguably invited inadmissible hearsay (although Hernandez did not include any hearsay in his answer to that question); the state argues that that question effectively triggered the curative admissibility doctrine. In the trial court, however, the state's argument was decidedly broader. When defendant objected on hearsay grounds, the state responded that he had "opened the door." When defendant objected on confrontation grounds, the state reiterated that he had "opened the door about the injury" and said that "the *whole point of his cross-examination* was that there was no injury *that [Hernandez] observed*." (Emphases added.) Thus, at trial, the state's response to defendant's objection was directed at the issue of M's injury generally, defendant's cross-examination

---

[6] As previously noted, in his opening brief, defendant preemptively addresses the curative admissibility doctrine, describing the state's successful argument that defendant had "opened the door" as "an apparent reference to the curative admissibility doctrine." Given his phrasing, defendant seems to be speculating, rather than asserting, that the trial court had the curative admissibility doctrine in mind. In any event, in reviewing a trial court's ruling, we must review the ruling that the court actually made (unless we are considering an alternative basis to affirm, but the state has not presented the curative admissibility doctrine as an alternative basis to affirm). If the record does not indicate that the trial court made a ruling on the curative admissibility doctrine in this case, then we would no more affirm based on the proper application of that doctrine than we would reverse based on the improper application of it.

generally, and what Hernandez had observed (a topic of admissible evidence)—which is consistent with the general "opened the door" principle—rather than being premised on defendant having invited inadmissible hearsay in one specific question.

Given that the trial court "agreed" with the state's response to defendant's objection without further elaboration, we presume that the court ruled on the same ground that the state responded, rather than *sua sponte* injecting the issue of the curative admissibility doctrine. That is, we presume that the court ruled on defendant's objection based on the general "opened the door" doctrine, not the curative admissibility doctrine.

Having so concluded, we decline to address the curative admissibility doctrine on a hypothetical basis, particularly when its relationship to the Sixth Amendment is a matter of first impression in Oregon.[7] Some federal circuit courts have held that, if a criminal defendant's waiver of confrontation rights is "clear and intentional," the trial court can admit hearsay statements under the curative admissibility doctrine without violating the Sixth Amendment. *E.g.*, *U. S. v. Holmes*, 620 F3d 836, 843 (8th Cir 2010); *U. S. v. Lopez-Medina*, 596 F3d 716, 733 (10th Cir 2010). Other circuit courts disagree, however, viewing that approach as inconsistent with *Crawford*. For example, the Sixth Circuit has taken the position that, even if hearsay statements are admissible "[a]s a matter of modern evidence law" because a defendant "opened the door" to a subject, that does not permit their admission over a Sixth Amendment objection: "If there is one theme that emerges from *Crawford*, it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules

---

[7] Relatedly, the state argues on appeal that defendant did not preserve his claim of error, because, although he objected on confrontation grounds, he did not expressly address the curative admissibility doctrine after the state "indicated" that it was relying on it. That is a bold argument, given that the state never expressly addressed the curative admissibility doctrine either, and it is the state that now claims to have been relying on it. Moreover, defendant's reply to the state's first "opened the door" assertion—that his "question was specifically about touching it, if it was tender to the touch"—is more susceptible to interpretation as referring to the curative admissibility doctrine than what the state said. We reject the state's preservation argument without further discussion.

governing the admission of hearsay statements," so "the mere fact that [the defendant] may have opened the door to the testimonial, out-of-court statement that violated his confrontation right is not sufficient to erase that violation." *U.S. v. Cromer*, 389 F3d 662, 679 (6th Cir 2004); *see also U.S. v. Hinton*, 423 F3d 355, 359-60 (3d Cir 2005) (adopting the reasoning of *Cromer*).

Neither we nor the Oregon Supreme Court has had occasion to address the relationship between the curative admissibility doctrine and the Sixth Amendment, as would be necessary to resolve that issue in Oregon until such time as the United States Supreme Court resolves the circuit split. We came close to the issue once in a pre-*Crawford* case—*see State v. Renly*, 111 Or App 453, 458, 827 P2d 1345 (1992)—but ultimately did not address it because the curative admissibility doctrine was inapplicable in that case in any event. Consequently, there is no Oregon case, before or after *Crawford*, regarding if or when the curative admissibility doctrine may be used to admit hearsay statements that the Sixth Amendment would otherwise preclude admitting. Again, we decline to address an issue of first impression, let alone one that the parties have not briefed,[8] when the record gives no indication that the trial court ruled on defendant's objection based on the curative admissibility doctrine.

As for the basis on which the trial court did rule— the more general impeachment principle of a party having "opened the door"—the state does not argue on appeal that *that* principle of admissibility is sufficient to overcome a Sixth Amendment Confrontation Clause objection, and we do not see how it could be under *Crawford*. We therefore conclude that the trial court erred in denying defendant's objection to the admission of M's out-of-court statements to Hernandez regarding her pain level on the day of the incident.

We also conclude that the error was not harmless. "Where a violation of a federal constitutional right is at

---

[8] Defendant provides no briefing on the relationship between the curative admissibility doctrine and the Sixth Amendment—limiting his arguments to why the doctrine does not apply—and the state's briefing consists of a footnote citing two cases.

issue, we apply the federal harmless error standard." *State v. Starr*, 269 Or App 97, 110, 344 P3d 100 (2015). Under that standard, "[a] violation of the Sixth Amendment does not require reversal 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" *Id*. (quoting *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986)). Relevant considerations include the importance of the evidence to the state's case, whether the evidence was cumulative, the presence or absence of corroborative or contradictory evidence, and the overall strength of the state's case. *Id*.

Here, the critical question for the jury with respect to the harassment charge was whether defendant had actually hit M, *i.e.*, subjected M to "offensive physical contact." The erroneously admitted evidence was qualitatively different from the other evidence on that issue. Notwithstanding the 9-1-1 call, V insisted at trial that she had not actually seen defendant hit M, that she had merely "assumed" that he hit her when she saw his arm coming, and that she did not know what M was referring to when M said that "it hurt." The only physical evidence was Hernandez's photographs of the ambiguous red "speckles" on M's face. As for Hernandez's testimony, prior to redirect, he had testified only to M's demeanor, M's appearance, and *V's statement* to him, whereas, in rebuttal, he revealed *M's statements* to him—statements that could only mean that defendant had actually "punched" M and, moreover, had done so hard enough to cause her a pain level of "8" on a scale on which "10" meant "excruciating pain."

Given M's absence from trial, V's equivocal testimony as the only eyewitness, and the lack of clear physical evidence, Hernandez's testimony about M's direct statements to him could well have affected the verdict. That conclusion is only amplified by the fact that the jury found defendant guilty of harassment by a narrow 10-2 verdict. Certainly, we cannot "confidently say" that the error "was harmless beyond a reasonable doubt." *Starr*, 269 Or App at 110.

Reversed and remanded.