No. 50          January 31, 2024          405

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Gregg LAWRENCE,
*Plaintiff-Appellant,*

*v.*

OREGON STATE FAIR COUNCIL,
a State of Oregon public corporation,
*Defendant-Respondent.*

Marion County Circuit Court
18CV05390; A172888

On remand from the Oregon Supreme Court, *Lawrence v. Oregon State Fair Council*, 370 Or 764, 525 P3d 464 (2023).

Audrey J. Broyles, Judge.

Submitted on remand April 28, 2023.

Kevin T. Lafky argued the cause for appellant. Also on the briefs was Lafky & Lafky.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

This case is before us on remand from the Supreme Court. *Lawrence v. Oregon State Fair Council*, 370 Or 764, 525 P3d 464 (2023) (*Lawrence II*). In our prior decision, we affirmed the trial court's exclusion of evidence under OEC 403 because we concluded that plaintiff did not preserve his argument for appeal. *Lawrence v. Oregon State Fair Council*, 318 Or App 766, 508 P3d 42 (2022), *rev'd and rem'd*, 370 Or 764, 525 P3d 464 (2023) (*Lawrence I*). The Supreme Court reversed that decision, holding that plaintiff's arguments were properly preserved. On remand, we consider the substance of those arguments.

Plaintiff appeals from a general judgment dismissing his negligence claim against defendant, the Oregon State Fair Council, for injuries incurred when he allegedly slipped and fell on some wet bleachers at the Oregon State Fair. That judgment was entered after a jury found against plaintiff and in favor of defendant on the negligence claim. Plaintiff assigns error to the trial court's OEC 403[1] ruling that excluded testimony related to a separate incident in which a girl allegedly slipped and fell on those same bleachers around the same time as plaintiff. Defendant contends that, if we conclude that the OEC 403 ruling was erroneous, we should nonetheless affirm the judgment because evidence related to the girl was inadmissible for another reason: the court erroneously concluded that defendant "opened the door" to testimony relating to the girl's slip and fall in the first instance. For the following reasons, we conclude that the court's OEC 403 ruling was not supported by law and that the court did not err when it ruled that defendant "opened the door" to testimony relating to the girl's slip and fall. Accordingly, we reverse and remand.

In reviewing a trial court's application of OEC 403, we begin by summarizing the evidence and procedural background related to the trial court's ruling. *State v. Kelley*, 293 Or App 90, 91, 426 P3d 226 (2018). Plaintiff attended the Oregon State Fair with his family, including his mother,

---

[1] OEC 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

who uses a wheelchair. After helping his mother out of her wheelchair and up some wet bleachers, plaintiff descended the bleachers to retrieve his mother's purse from her wheelchair, which was parked on the walkway. On his way down, or shortly before, a young girl purportedly slipped and fell while walking on the wet bleachers. Shortly thereafter, plaintiff also slipped and fell on the same bleachers, incurring injury. Plaintiff sued defendant for negligence, alleging that his injury was caused by defendant's failure "to supervise and maintain its premises in a reasonably safe manner."

Before trial, defendant filed a motion *in limine* to exclude evidence related to the girl who fell on the bleachers at around the same time as plaintiff. The court granted that pretrial motion, concluding that evidence of the girl's fall was more prejudicial than probative under OEC 403. That ruling is not directly before us on appeal, but it provides context for the court's subsequent ruling on the same issue. Later, at trial, during cross examination of plaintiff, defendant elicited testimony that plaintiff's elderly mother did not fall while going up the bleachers. Plaintiff then moved for reconsideration of the motion *in limine*, arguing that defendant's questions about plaintiff's mother *not* falling on the bleachers "opened the door" to testimony about the girl who did. That testimony was to come from plaintiff and plaintiff's relatives who would testify that they had observed the girl fall on the same bleachers around the same time. Despite agreeing with plaintiff that defendant "opened the door," the court once again excluded testimony that the girl slipped and fell on the bleachers. In its ruling, however, the court seemingly changed its reasoning for excluding evidence of the girl's fall under OEC 403. The court determined that plaintiff's and plaintiff's relatives' testimony was only comprised of "self-serving" statements and concluded "that form of evidence would [not] be appropriate." The court noted, however, that if there were "independent evidence" of the girl's slip and fall, the court would consider that evidence.[2] Later, plaintiff raised the issue one

---

[2] Although we ultimately disagree with the trial court's decision, we understand why the court's analysis under OEC 403 had to change. The balance of the factors under OEC 403 necessarily changed when plaintiff was not offering the evidence of the girl's fall on a blank slate. Instead, plaintiff was now offering the

last time, to which the court reiterated that "self-serving" statements lack the requisite "indicia of reliability" to be admissible. Ultimately, the jury never considered evidence of the girl's fall and returned a verdict in favor of defendant, which was reflected in the judgment entered by the court.

Plaintiff then appealed that judgment to us. We originally affirmed the trial court, holding that plaintiff did not preserve an argument that the trial court erred in applying OEC 403 and observing that the court ultimately decided that the evidence was inadmissible for other reasons relating to the form of evidence. *Lawrence I*, 318 Or App at 770-71. Plaintiff obtained review of that decision in the Supreme Court. The Supreme Court concluded that plaintiff's arguments under OEC 403 were properly preserved, reversed our decision, and remanded the case back to us for further proceedings. *Lawrence II*, 370 Or at 775. We now decide the appeal on its merits.

Plaintiff contends that the trial court erred when conducting the OEC 403 balancing because it excluded plaintiff's and his relatives' testimony regarding the girl's fall based on the purported unreliability of "self-serving" testimony. Plaintiff argues that the self-serving nature of the statements "go[es] to the weight of the evidence, not its admissibility." In the circumstances presented here, whether the trial court properly applied the OEC 403 balancing test is a question of law. *State v. Boauod*, 302 Or App 67, 72-73, 459 P3d 903 (2020).

As noted, OEC 403 provides that, relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."[3] We under-

---

evidence to rebut defendant's evidence that the bleachers were not dangerous because plaintiff's mother safely ascended them.

[3] Defendant admits on appeal that evidence of an incident involving a girl falling on the same bleacher around the same time as plaintiff meets the "very low" admissibility standard under OEC 401. *See* OEC 401 (defining "relevant evidence" as evidence having any tendency to make a fact of consequence more or less probable than it would be without such evidence). Defendant concedes that the evidence may be relevant to show that any water accumulating on the bleachers was a dangerous condition. We need not address that issue. As we discuss later, the evidence became relevant to rebut defendant's contention that the bleachers were not dangerous because *other* patrons, such as plaintiff's mother, safely ascended those same bleachers around the same time.

stand the trial court to have ruled that the "self-serving" nature of the testimony made it necessarily unreliable, and, on that basis, it either had no probative value or was unfairly prejudicial to defendant. Self-serving statements are not inadmissible simply because they support the declarant's position in a case. The fact that a person makes a statement in support of their position may make the statement self-serving, but it does not, without more, make the statement unreliable or untrue. The mere fact that a statement is considered self-serving does not make it *per se* unreliable or so unreliable that it *must* be rejected as either lacking any probative value or unfairly prejudicial under OEC 403. So-called self-serving testimony has probative value and can be assessed by the factfinder and given what weight the factfinder accords it. As we discuss in greater detail below, the reliability of such statements is generally an issue of weight for the factfinder. It is not a basis for *per se* exclusion under OEC 403.

We observe that the Supreme Court has already noted in this case that, in certain contexts, such as eyewitness identifications, "[t]he reliability of the evidence may be a factor in an OEC 403 analysis because it may affect a court's evaluation of the evidence's probative value." *Lawrence II*, 370 Or at 773. But even in that context, the court's ability to exclude eyewitness testimony because it is "unreliable" is usually limited to specific instances. *See State v. Lawson/ James*, 352 Or 724, 763, 291 P3d 673 (2012) (Only when "suggestive police procedures * * * give rise to an inference of unreliability * * * may a trial court exclude the eyewitness identification under OEC 403."). Furthermore, the Supreme Court has recognized that the role of evaluating the reliability of evidence is traditionally left to the factfinder. *See State v. Hickman*, 355 Or 715, 726, 330 P3d 551 (2014), *modified on recons*, 356 Or 687, 343 P3d 634 (2015) ("'[I]n [eyewitness identifications], the trial court assumes a heightened role as an evidentiary gatekeeper because "traditional" methods of testing reliability—like cross-examination—can be ineffective at discrediting unreliable or inaccurate eyewitness identification evidence.'" (Quoting *Lawson/James*, 352 Or at 758.)); *see also* ORS 44.370 ("Where the trial is by the jury, they are the exclusive judges of the credibility of the witness."). Thus, as a general matter and subject to narrow

exceptions in the Oregon Evidence Code that are not at issue here, the Supreme Court has held that "'[f]erreting out and discounting biased testimony is treated as a question of believability for the jury, not admissibility for the court.'" *Hickman*, 355 Or at 728 (quoting *Equitable Life Assurance v. McKay*, 306 Or 493, 498, 760 P2d 871 (1988)).

Defendant has not identified, and we have yet to find, an exception that allows courts to reject the admissibility of "self-serving" statements, on the basis that they are necessarily unreliable or an improper form of evidence. On the contrary, Oregon courts have indicated that the weight and reliability of "self-serving testimony" is best evaluated by the factfinder. *See Zeller v. Dahl*, 262 Or 515, 519, 499 P2d 1316 (1972) ("Another factor to be considered is whether the statement was made by a party to the proceeding, so as to be self-serving. We have held that this fact does not *of itself* require the exclusion of such testimony." (Emphasis added.)); *see also Johnson and Henderson Partnership v. Henderson*, 321 Or App 134, 142 n 6, 516 P3d 726 (2022), *rev den*, 370 Or 714 (2023) ("Of course, all declarations or testimony by a proponent of a claim to prove that claim * * * are 'self-serving' to an extent. A factfinder on *de novo* review or a jury at trial might disregard evidence if it found it purely self-serving and otherwise not credible."). We see no reason to deviate from that general practice now.[4]

Citing to *D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 125, 117 P3d 1032 (2005), defendant argues that we should defer to the trial court's implied finding that plaintiff was not credible because "[o]rdinarily, we defer to a trial court's credibility findings that are based on that court's superior opportunity to observe the demeanor of the witnesses." We are not persuaded that the trial court made an implied finding of fact about plaintiff's or his family's credibility. Rather, the court made a legal ruling that self-serving

---

[4] We recognize that *Zeller* and *Johnson and Henderson Partnership* do not address OEC 403. Indeed, as noted, the parties have not cited law to us that considers whether a trial court may exclude so-called "self-serving" testimony under OEC 403 based solely on the claimed lack of reliability of such evidence. Nevertheless, we have identified a general rule in the case law that such testimony is to be considered by the factfinders for the weight they accord it and not excluded solely because the testimony is self-serving. We are not persuaded that the circumstances presented here call for a further exception to that general rule.

testimony is inherently unreliable and an improper form of evidence. Further, *D'Abbracci* is not controlling in this case. In *D'Abbracci*, we were citing the general rule on deference to a trial court's credibility findings because the trial court had acted as a factfinder in a bench trial. That circumstance is not present here.

Because the court erroneously excluded the "self-serving" testimony as inherently unreliable when conducting the required OEC 403 balancing, that ruling was not supported by law.[5]

Defendant contends that we should still affirm the trial court's decision to exclude the testimony regardless of any trial court error under OEC 403. Defendant contends that evidence of the girl's fall was nonetheless inadmissible because defendant never "opened the door" to that evidence in the first instance. Invoking the "curative admissibility rule," defendant argues that it never "opened the door" to evidence of the girl's fall because the "cross-examination questions related to plaintiff's mother's ability to safely climb the wet bleachers were admissible." Defendant's argument conflates two legal concepts, "opening the door" and "curative admissibility."[6] Because those two doctrines are similar, "context is therefore critical to determine what a trial court meant in a given situation in ruling that a party 'opened the door' on a particular subject." *State v. Gutierrez,*

---

[5] As discussed, we understand the trial court to have concluded that "self-serving" testimony is *per se* unreliable and an inappropriate "form of evidence" that must be excluded under OEC 403. We reject that legal conclusion. To the extent that the trial court instead was assigning such evidence either no or almost no probative value when balancing against the danger of unfair prejudice, we conclude that the trial court abused its discretion in doing so. *Boauod*, 302 Or App at 72-73 (applying abuse of discretion standard when reviewing "ultimate determination" of OEC 403 balancing).

[6] Although "opening the door" and "curative admissibility" are similar legal concepts, under Oregon law, the general concept of "opening the door" is distinct from the more specific "curative admissibility doctrine." As we explained in *State v. Gutierrez*, 304 Or App 431, 440, 466 P3d 75 (2020), a party "opens the door" when it introduces or elicits evidence of an issue at trial. Once the door is open, the other party may counter or impeach with relevant evidence of their own, even if that evidence would have been otherwise irrelevant. On the other hand, the curative admissibility rule specifically applies when "one party elicits *inadmissible testimony* and the other party is permitted to counter it with otherwise inadmissible testimony." *Id.* (emphasis in original); *see also State v. Apodaca*, 291 Or App 268, 273-275, 420 P3d 670 (2018) (distinguishing between "opening the door" and "curative admissibility").

304 Or App 431, 440, 466 P3d 75 (2020). In the trial court, plaintiff specifically argued that by eliciting testimony that plaintiff's mother did not fall on the bleachers, implying that the bleachers were safe, defendant "opened the door" to evidence that the bleachers were not safe, namely, evidence that a girl fell on those same bleachers at around the same time. After a colloquy with the parties, the court concluded that the "issue ha[d] been raised" and on that basis ruled that defendant "opened the door." With that context, along with the fact that the trial court did not evaluate the admissibility of the elicited testimony—the identifying characteristic of the curative admissibility doctrine—we cannot conclude that the court applied the curative admissibility rule.

Instead, to determine whether defendant opened the door to evidence of the girl's fall, we must examine whether evidence of the *girl's fall* was relevant to rebut or impeach the testimony elicited by defendant. *See*, *e.g.*, *State v. Renly*, 111 Or App 453, 458, 827 P2d 1345 (1992) (no "open door" where evidence offered to rebut did "not in any way tend to negate, explain or counterbalance any misleading or unfair impression that defendant's evidence could possibly have caused the jury"). We review a trial court's determination of relevance for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). By defendant's admission, it elicited evidence—that plaintiff's mother did not fall—in part to rebut plaintiff's assertion that the "[bleachers] presented a dangerous condition." As a result, plaintiff's "other act" evidence which the court previously ruled minimally relevant—that a girl also fell on the bleachers—then became relevant to negate defendant's use of "other act" evidence to establish that the bleachers were *not* dangerous. Accordingly, because the trial court properly assessed the relevance of the contested evidence when it concluded that the "issue had been raised," it did not err in concluding that defendant's cross examination "opened the door" to testimony that a girl also fell on the bleachers.

Lastly, we are required to consider whether the error was harmless. *State v. Davis*, 336 Or 19, 27, 77 P3d 1111 (2003). An error is harmless if there is "little likelihood that the particular error affected the verdict." *Id.* at 32. To determine whether an error affected the verdict we assess

"differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue" and "consider the importance of the erroneously admitted evidence to a party's theory of the case." *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). Here, the contested evidence was not cumulative, duplicative, or unhelpful to the jury. On the contrary, the contested evidence was offered to rebut evidence that defendant had offered as probative of the dangerousness of the bleachers, a central issue in the case and a key element of plaintiff's claim. *See Ault v. Del Var Properties, LLC*, 281 Or App 840, 849 383 P3d 867 (2016), *rev den*, 361 Or 311 (2017) (explaining that the dangerousness of the condition has ramifications on possessor liability). For those reasons, we cannot conclude that the error was harmless.

Reversed and remanded.