Argued and submitted November 18, 2021; reversed and remanded as to plaintiffs' claims, otherwise affirmed August 3, 2022; petition for review denied January 19, 2023 (370 Or 714)

## THE JOHNSON AND HENDERSON PARTNERSHIP
## and Matt Johnson,
*Plaintiffs-Appellants,*

*v.*

## Patrick HENDERSON
## and Theresa Henderson,
## Individually and as Co-Trustees of
## the Henderson Living Trust,
*Defendants-Respondents.*

### Union County Circuit Court
### 17CV29245; A173547

516 P3d 726

This case arises out of a dispute between plaintiff Matt Johnson and defendants Patrick and Theresa Henderson over the existence of an alleged oral partnership agreement to purchase a vacant lot, build a home, and then rent the property. Johnson, on his own behalf and on behalf of the purported partnership, filed a claim for declaratory judgment seeking a ruling declaring that a partnership existed, as well as other related claims stemming from the alleged partnership. The trial court granted defendants' motion for summary judgment and dismissed plaintiffs' claims, concluding that plaintiffs had failed to present sufficient evidence to create a genuine issue of material fact as to whether a partnership was created. Plaintiffs appeal, assigning error to that ruling. *Held*: First, the trial court erred in dismissing statements in a declaration submitted by Johnson as self-serving, and in refusing to consider those statements in the context of defendants' summary judgment motion. Properly considering that evidence in the light most favorable to plaintiffs, the Court of Appeals concluded that plaintiffs presented sufficient evidence to create a genuine issue of material fact as to whether a partnership was created.

Reversed and remanded as to plaintiffs' claims; otherwise affirmed.

Thomas B. Powers, Judge.

D. Zachary Hostetter argued the cause for appellants. Also on the briefs were Benjamin Boyd and Hostetter Law Group, LLP.

J. Aaron Landau argued the cause for respondents. Also on the brief was Harrang Long Gary Rudnick P.C.

Before Shorr, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

SHORR, P. J.

Reversed and remanded as to plaintiffs' claims; otherwise affirmed.

**SHORR, P. J.**

This case arises out of a dispute between plaintiff Matt Johnson and defendants Patrick and Theresa Henderson over the existence of an alleged oral partnership agreement to purchase a vacant lot, build a home, and then rent the property. Johnson, on his own behalf and on behalf of the purported partnership, filed a claim for declaratory judgment seeking a ruling declaring that a partnership existed. Based on the partnership's alleged existence, plaintiffs also filed claims for an accounting, breach of contract, violation and enforcement of partnership duties, and unjust enrichment. Defendants responded with six counterclaims, five of which asserted that no partnership existed between the parties and one alternative claim if the court found that a partnership existed. The trial court granted defendants' motion for summary judgment and dismissed plaintiffs' claims.[1] Plaintiffs now appeal, assigning error to that ruling.

As we discuss below, we conclude that plaintiffs presented sufficient evidence to create a genuine issue of material fact as to whether a partnership was created. Accordingly, we reverse the trial court's grant of defendants' motion for summary judgment and the resulting dismissal of plaintiffs' claims. We otherwise affirm.

## I.   THE BACKGROUND FACTS TO THIS DISPUTE

We review a trial court's grant of summary judgment to determine whether there is "no genuine issue as to any material fact" and whether the moving parties were "entitled to prevail as a matter of law." ORCP 47 C. We view all facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to the non-moving parties, here, plaintiffs. *Id*. We state the facts consistently with that standard. As we discuss later, we take many of the following material facts from a declaration that

---

[1] Plaintiffs cross-moved for summary judgment against some of defendants' counterclaims. The court granted plaintiffs' motion as to defendants' elder abuse counterclaim and denied plaintiffs' motion as to defendants' breach of contract and conversion counterclaims. Following defendants' notice of voluntary dismissal, the court dismissed defendants' remaining counterclaims without prejudice. Those counterclaims are not at issue in this appeal.

Johnson filed in the trial court in support of his claims and in opposition to defendants' motion for summary judgment.

Johnson is a general contractor who owns Eagle Cap Construction, LLC and has worked on various construction and repair projects for defendants. In 2011, defendants were in search of real property to purchase and use to build a residential rental unit in Union County, Oregon. Defendants approached Johnson to discuss constructing a rental unit on a vacant lot that defendants were to purchase. In his declaration submitted in opposition to defendants' summary judgment motion, Johnson stated that the parties agreed to carry on, as co-owners, a for-profit business called the Johnson and Henderson Partnership. Johnson contended that defendants agreed to contribute land and money for the materials to build the rental unit. Johnson, for his part, agreed to arrange for the rental unit to be built, including by engaging independent contractors, and to cover expenses related to construction and additional material costs not covered by defendants' contribution. The parties agreed to share in the profits and losses of the partnership, however the details of that arrangement were not determined until around 2015.

Acting together, the parties identified a vacant lot to purchase. Defendants purchased the property as cotrustees of the Henderson Living Trust for approximately $57,900 and held title to the property in their names. Johnson's declaration acknowledged that title for the property was either held by the trust or by defendants as cotrustees of the trust and not by the partnership. However, he asserts that defendants contributed the property to the partnership.

After purchasing the property, the parties hired Jadato Design, LLC (Jadato) to draft the plans for building the residential unit. Jadato emailed a proposed "Spec-Rental Project" plan to both parties. The plans referred to the client as "HJ Incorporated," which Johnson contended stands for "Henderson Johnson Incorporated." However, the parties never incorporated their business. Furthermore, the parties agree that they never referred to their relationship as "HJ Incorporated," either alone or in the presence of Jadato.

On behalf of the partnership, Johnson hired his own company, Eagle Cap Construction, LLC, as well as two other independent contractors to obtain necessary permits and construct the residential unit. In building permit applications, Johnson listed himself as the owner of the residence and Eagle Cap Construction, LLC as the contractor. Johnson told several individuals involved in the construction that he was building the residential unit with a business partner. Johnson managed the construction project and ensured that all contractors were paid for their work. In total, Johnson asserted that he contributed approximately $100,000 in labor and material costs to build the residential unit. He asserted that he was not paid for that work. Defendants contributed an additional $84,000 to purchase materials to build the residential unit.

In 2012, the parties agreed to rent the property to the Pettys, and the Pettys moved into the residential unit although it was not fully complete. James Petty made an agreement with Johnson that he would trade his labor to complete various projects on the rental unit in exchange for Johnson's 50 percent share of the rental income. The Pettys separately paid defendants $600 per month in rent. After the Pettys vacated the residence in 2014, Johnson secured the Ziers as new tenants. Johnson signed the Ziers' rental agreement as the landlord, acted as the property's manager, and told the Ziers that he owned the property with a partner. The Ziers paid $1,200 in rent directly to Johnson, a rate set by the agreement of the parties.

In 2014, Johnson opened a joint checking account on behalf of the partnership to which Johnson and defendants had signing authority. The account was used by Johnson to deposit rent checks and by Johnson and defendants to withdraw rental income. In July 2014, Johnson withdrew $7,000 from the joint account, with defendants' permission, to settle a debt for prior work he had completed for defendants on a different property unrelated to the alleged partnership.

In March or April of 2015, around the same time that the rental unit was completed, the parties met to

discuss how to split profits from the rental income.[2] In his declaration, Johnson stated that the parties agreed to a 60/40 split—defendants would receive a 60 percent ownership interest in the partnership and Johnson would receive a 40 percent interest. Johnson asserted that the parties' agreement was reflected in handwritten notes made by Theresa Henderson during that meeting. Although those notes do contain several references to "60/40," they do not indicate who referred to those percentages or in what context.[3] The parties agreed to deduct $200 for tax and insurance expenses from the total rent amount received each month from the Ziers, and to split the remaining $1,000 in monthly rental income according to their respective 60/40 interests. Following the 2015 meeting, Johnson continued to manage the property and collect rent from the Ziers, in the form of checks made out to Johnson personally.

Throughout that period, Johnson claimed the entire rental income from the property and the expenses for maintaining the rental unit on his personal taxes. Johnson also told his banker that the property was owned in partnership with defendants and submitted financial statements to his bank in which he identified the rental property as an asset with title held in the "Patrick Henderson Trust." Further, Johnson took out a business line of credit against the property, with defendants' permission. The line of credit was used as security for Eagle Cap Construction, LLC for several years.

_____

[2] According to defendants, Theresa Henderson asked Johnson for documentation regarding what defendants still owed Johnson for construction of the rental unit, and Johnson did not respond for about a year. Defendants claim that the 2015 meeting was intended to settle any expenses defendants owed Johnson for building the rental unit. Defendants further claim that once they realized Johnson wanted to form a partnership, they refused the offer. Because we must view all facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to plaintiffs, we do not consider those facts in our analysis.

[3] Theresa Henderson testified, during a deposition, that her notes simply reflected her attempt to capture what Johnson was saying and do not reflect any agreement as to any ownership interests. Theresa Henderson also testified that the parties agreed that Johnson would initially receive 33 percent of the rental income as reimbursement for his construction costs, and that that figure later increased to 40 percent to also compensate Johnson for maintaining the rental property. Again, we do not consider those facts, considering the posture of this case.

Money was routinely deposited and withdrawn from the joint bank account until April 2017, when defendants informed Johnson that they no longer wanted to engage in business dealings with him.[4] Subsequently, defendants terminated the rental agreement with the Ziers without Johnson's consent. Defendants later listed the property for sale, again without Johnson's consent.

Johnson, on behalf of himself and the partnership, brought this lawsuit against defendants, in their individual capacities and as cotrustees of the Henderson Living Trust, in July 2017. Plaintiffs alleged six claims for relief, all arising out of the allegation that "[i]n or about February 2011, [Johnson] and defendants associated together and agreed to carry on as co-owners a business for profit by purchasing real property upon which a residence would be constructed in order to produce rental income * * *." In their answer, defendants alleged several counterclaims, including breach of contract to construct the rental unit and manage the property, conversion, fraud, and elder abuse. Both defendants and plaintiffs filed motions for summary judgment.

The trial court granted defendants' motion for summary judgment, finding that "[p]laintiffs failed to produce substantial evidence sufficient to raise a genuine issue for trial as to the existence of a partnership between the parties." In reaching its ruling, the court specifically noted that "[e]vidence that is equally consistent with the existence and nonexistence of a partnership fails to necessarily raise an inference of partnership[,]" and that "[s]elf-serving declaration evidence is insufficient to prove an alleged oral or implied partnership agreement." After disregarding the evidence submitted in Johnson's "self-serving" declaration,

---

[4] Defendants claimed that they terminated the relationship with Johnson because Johnson had misused rental payments he collected. Defendants also asserted that they conducted a review of the joint account in April 2017 and discovered that Johnson had withdrawn over $9,500 more than the parties had agreed to and had pocketed $6,640.10 in rent payments without depositing it in the joint account first. After reentering the house, defendants discovered multiple defects in the residence including substandard construction, failure to comply with building inspection requirements, failure to obtain an occupancy permit, and code violations. Defendants expended more than $63,000 to remedy those defects. Those facts are not significant to the question before us of whether there were genuine issues of material fact regarding whether a partnership existed between the parties.

the court concluded that Johnson had "produced no evidence at all regarding the creation of a partnership between the parties by oral agreement occurring in 2011 or 2012," and that "[t]he existence of a partnership cannot be inferred from the conduct of the parties during the period between 2012 and April 2017, when examined as a whole." Plaintiffs assign error to the trial court's grant of summary judgment against their claims.

## II.   THE TRIAL COURT'S REJECTION OF JOHNSON'S "SELF-SERVING" DECLARATION

Plaintiffs contend that the trial court erred in rejecting Johnson's declaration as insufficient and self-serving evidence. We address that issue first, because the trial court's conclusion on that issue significantly affected the balance of the trial court's analysis. In short, we agree with plaintiffs that the trial court erred in that regard. We addressed that precise issue in *Wirth v. Sierra Cascade, LLC*, where we concluded that a party's declaration, when submitted in opposition to summary judgment, *could* be considered to demonstrate the creation of a partnership if the declaration's "averments are relevant to the factors of ORS 67.055 and the factual setup as a whole." 234 Or App 740, 761, 230 P3d 29, *rev den*, 348 Or 669 (2010). We discuss those factors below but pause here to note that prior case law that was dismissive of purported "self-serving" declarations arose in the context of *de novo* reviews of the facts. *See Burnett v. Lemon et ux.*, 185 Or 54, 62, 199 P2d 910 (1948) (stating, on *de novo* review, that a partnership "relationship cannot be established by self-serving declarations"); *Oshatz v. Goltz*, 55 Or App 173, 177-78, 637 P2d 628 (1981) (applying the same rule, again on *de novo* review). As we concluded in *Wirth*, "[b]ecause our review on summary judgment is not *de novo*, the evidentiary standards from *Burnett* and *Oshatz*, pertaining to 'self-serving declarations,' are inapplicable." 234 Or App at 761. Here, the trial court erred in dismissing the statements in Johnson's declaration as self-serving and in refusing to consider them in the context of defendants' summary judgment motion.[5]

---

[5] Defendants also contend that Johnson's declaration could not be considered by the trial court to create an issue of fact regarding the party's initial agreement

## III.   APPLICATION OF THE SUMMARY JUDGMENT STANDARD TO THE FACTS IN THE CONTEXT OF RELEVANT PARTNERSHIP LAW

We turn to our review of the trial court's grant of summary judgment. "We review a trial court's grant of summary judgment for legal error, and we will affirm if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." *Towner v. Bernardo/Silverton Health*, 304 Or App 397, 400, 467 P3d 17, *rev den*, 367 Or 115 (2020). There is "[n]o genuine issue as to a material fact" when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

Plaintiffs argue that the trial court failed to view the relevant facts in the light most favorable to plaintiffs. As we explained above, we agree. The trial court discounted Johnson's declaration as self-serving and insufficient rather than crediting the statements in it that are relevant to the creation of a partnership.[6]

Relatedly, plaintiffs argue that they provided sufficient evidence to create an issue of fact that precluded the trial court from dismissing the partnership claims as a matter of law. As we explain below, we again agree.

We first discuss the pertinent law on partnerships. The Oregon Revised Partnership Act defines a partnership

---

in 2011 because it directly contradicted Johnson's earlier deposition testimony on that issue. We disagree that a reasonable factfinder would have to conclude that the declaration contradicts the earlier testimony, and we therefore do not otherwise reach defendants' argument that the declaration must be ignored. *See Burgdorf v. Weston*, 259 Or App 755, 775-76, 316 P3d 303 (2013), *rev den*, 355 Or 380 (2014) (stating the test for determining whether an affidavit fails to raise a genuine issue of material fact because it directly contradicts earlier evidence or testimony).

[6] Of course, all declarations or testimony by a proponent of a claim to prove that claim or, here, oppose summary judgment on that claim, are "self-serving" to an extent. A factfinder on *de novo* review or a jury at trial might disregard evidence if it found it purely self-serving and otherwise not credible. *See Wirth*, 234 Or App at 765 (stating that "it is the role of the jury to determine whether that evidence is credible"). However, that type of credibility determination is inappropriate in our review of the trial court's ruling on defendants' summary judgment motion.

as "an association of two or more persons to carry on as co-owners a business for profit." ORS 67.005(7). A partnership can be formed without the persons involved having the intent to do so. ORS 67.055(1).

> "Factors indicating that persons have created a partnership include:
>
> "(A)  Their receipt of or right to receive a share of profits of the business;
>
> "(B)  Their expression of an intent to be partners in the business;
>
> "(C)  Their participation or right to participate in control of the business;
>
> "(D)  Their sharing or agreeing to share losses of the business or liability for claims by third parties against the business; and
>
> "(E)  Their contributing or agreeing to contribute money or property to the business."

ORS 67.055(4)(a). None of the factors listed above are required to establish the existence of a partnership, nor are they exclusive. *See* ORS 67.055(e) ("An agreement to share losses by the owners of a business is not necessary to create a partnership."); *Wirth*, 234 Or App at 759 (noting that ORS 67.055(4)(a) codifies a nonexclusive list of factors indicating the existence of a partnership). The party alleging that a partnership exists must show that there is "some evidence" of some of the factors in ORS 67.055(4)(a) for the factfinder to find that a partnership exists. *Id.* at 761-64.

        As the trial court noted, evidence that is equally consistent with the existence and nonexistence of a partnership "does not necessarily raise an inference of [the existence of a] partnership." *Id.* at 755 (citing *Preston v. State Ind. Accident Com.*, 174 Or 553, 566, 149 P2d 957 (1944) (applying that principle in the context of a review of a trial court's grant of a motion for summary judgment)). However, the question of "whether a partnership exists based on the evidence in the record will usually be a question for the jury." *Wirth*, 234 Or App at 765; *see also Preston*, 174 Or at 562 ("If there was any substantial evidence of the existence of a

partnership, a jury question would be involved."). Applying these principles in the summary judgment context, "[i]f the facts justify the single inference in the minds of reasonable people that an oral partnership agreement did *not* exist * * *, then there is no genuine issue of material fact as to whether a partnership agreement existed [and the moving party is] entitled to summary judgment as a matter of law." *Wirth*, 234 Or App at 761 (emphasis in original). We turn to our consideration of the summary judgment record as applied to the relevant and nonexclusive partnership factors.

A.  *Sharing of Profits (ORS 67.055(4)(a)(A))*

Though no single factor in ORS 67.055(4)(a) proves the existence of a partnership, a sharing of profits is one of the strongest indicators of a partnership. *See Wirth*, 234 Or App at 760 (stating that "it can be inferred that receiving a share of profits is the most important" of the five statutory partnership factors). As relevant here, ORS 67.055(4)(d) provides that

"[i]t is a rebuttable presumption that a person who receives a share of the profits of a business is a partner in the business, unless the profits were received in payment of:

"(A)  A debt by installments or otherwise;

"(B)  Wages or other compensation to an employee or independent contractor[.]"

Johnson's declaration stated that, when defendants approached plaintiff in 2011, the parties agreed to be co-owners of a business that would purchase a vacant lot and build a rental property to create and share profits. That fact constitutes some evidence that, in 2011, the parties orally agreed to share profits.

Johnson further stated that the parties orally agreed in March or April 2015 that Johnson would own a 40 percent share of the partnership and defendants would own a 60 percent share. The parties also created a joint bank account. Deposits came from the Ziers' rent checks, which were made out to Johnson personally, and withdrawals over

time were at least arguably consistent with a 60/40 split of profits.[7] Those facts constitute some evidence that the parties were sharing profits from the rental unit.[8]

B. *Expression of Intent to be Partners (ORS 67.055(4)(a)(B))*

The "expression of an intent to be partners in the business" is the next statutory factor indicating that persons have created a partnership. ORS 67.055(4)(a)(B). Plaintiffs point to evidence that Jadato referred to the parties as "HJ Incorporated," that Johnson represented himself to others as a partner of a business, and that the parties created and utilized a joint bank account. Plaintiffs contend that those facts constitute evidence indicating an expression of intent to be partners.

First, the fact that Jadato referred to the parties as HJ Incorporated is not evidence that the parties themselves expressed an intent to be partners; indeed, the parties agree that they did not tell Jadato to refer to them that way. *Cf. Wirth*, 234 Or App at 762 (finding some evidence of an expressed intent to be partners when the plaintiffs referred to the defendant as their "partner"). However, Johnson's representations to third parties that he was a partner in a business provides some evidence that the parties intended to create a partnership. Further, evidence that the parties opened a joint bank account to receive rent checks and pay out expenses related to the rental unit also constitutes some evidence that the parties intended to create a partnership with respect to the rental unit. "In the absence of an express agreement codifying the relationship," the court may infer a partnership relationship "from the conduct of the parties in relation to themselves and to third parties."

---

[7] Before the parties reached agreement on the division of rental income, Johnson made a $7,000 withdrawal from the joint account as payment for work he performed on a separate residence owned by defendants. Because the parties agree that that particular withdrawal was payment for a debt for prior work, it does not give rise to a rebuttable presumption that the parties were sharing a partnership's profits. *See* ORS 67.055(4)(d)(A).

[8] The parties disagree about whether Johnson's withdrawals were wrongful. Defendants also point to evidence that Johnson typically paid himself far more than 40 percent of the net rents. Those arguments all turn on questions of fact. Under the summary judgment standard, we must view the facts in the light most favorable to plaintiffs.

*Hayes v. Killinger*, 235 Or 465, 471, 385 P2d 747 (1963). In total, there is some evidence of conduct by the parties that supports the existence of a possible oral agreement to form a partnership.

C.    *Control of the Business (ORS 67.055(4)(a)(C))*

We next consider whether plaintiffs presented some evidence that Johnson participated in or had a right to participate in control of the business. *See* ORS 67.055 (4)(a)(C). Plaintiffs argue that, pursuant to the parties' initial oral agreement in 2011, Johnson exerted control over the business by managing the construction of the rental unit, receiving a copy of the building plans, and securing building permits. Plaintiffs contend that Johnson later exerted control over the business by obtaining tenants, signing the Ziers' rental agreement, managing the property as a landlord, collecting rent payments, and freely depositing and withdrawing money from the joint bank account.

That Johnson managed the construction of the rental unit, received a copy of the building plans, and secured building permits is equally consistent with both plaintiffs' claim that Johnson was acting pursuant to his role as a partner and defendants' contention that Johnson was simply fulfilling his role as the general contractor on the construction project. Because those facts are "consistent with the existence of a partnership, but equally consistent with its nonexistence, [they do] not necessarily raise an inference of [a] partnership when the burden of proof is upon the plaintiff." *Preston*, 174 Or at 566. Johnson's continuing role in obtaining tenants and managing the property is similar—although it could indicate his control over partnership property, it is equally consistent with defendants' claim that Johnson was acting as a paid property manager. However, Johnson's control of and authority over the joint bank account provides some evidence of Johnson's participation in or right to participate in control of the alleged partnership.[9]

_____

[9] Defendants contend that Johnson's control over the joint bank account is actually evidence that Johnson was improperly taking money from defendants without their authority. It is up to a factfinder or jury to decide that issue of fact.

D.  *Sharing of Losses or Liability for Claims by Third Parties Against the Business (ORS 67.055(4)(a)(D))*

We next consider whether the parties shared or agreed to share losses of the business or liability for claims by third parties against the business. *See* ORS 67.055 (4)(a)(D) (describing such loss sharing as a factor indicating a partnership). Johnson's declaration stated that the parties made an oral agreement to share in the losses of the partnership in 2011. That constitutes some evidence that the parties agreed to share losses.

As noted, the record also shows that Johnson signed the rental agreement with the Ziers as the landlord of the rental property. By doing so, Johnson exposed himself to potential losses and liability as the landlord under the rental agreement and the Oregon Residential Landlord and Tenant Act (ORS chapter 90).

E.  *Contributions to the Partnership (ORS 67.055(4)(a)(E)*

Lastly, we consider whether plaintiffs presented evidence that the parties contributed or agreed to contribute money or property to the business. *See* ORS 67.055 (4)(a)(E) (stating that contributions of money or property may be an indication of a partnership). Johnson's declaration averred that, in 2011, the parties agreed to create a business relationship in which defendants would purchase a bare lot, Johnson would construct a home on the lot, and the parties would rent the home for profit. Consistent with that agreement, defendants provided the funds to purchase the bare lot as well as materials to build the rental unit.[10] Those

---

[10]  Here, the undisputed evidence is that defendants purchased the property in their names alone as trustees of their living trust using solely defendants' assets. The title of the property does not include the name of the partnership, nor is there any instrument transferring title to the partnership. Thus, there is at least a rebuttable presumption that the property is separate property of the trust, even if the property was used for partnership purposes. *See* ORS 67.065(4) (stating that "[i]t is a rebuttable presumption that property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is separate property, even if used for partnership purposes."). However, "[i]t is well-established—and also self-evident—that title to the real property of a partnership or joint venture may reside in one of the members rather than in the entity and that the locus of the title does not necessarily affect either the entity's rights in the property or the entity's existence." *Davis v. Tadevic*, 73 Or App 587, 590, 699 P2d 1140, *rev den*, 299 Or 663 (1985).

contributions reached a total of approximately $150,000. Johnson contributed approximately $100,000 in both material and labor to build the rental unit. Further, and importantly, Johnson averred that he was not paid for that work. A reasonable factfinder could find that those actions of the parties constitute some evidence of contributions to a partnership.

## IV.  CONCLUSION

In sum, based on our review of the facts in the light most favorable to plaintiffs, we conclude that plaintiffs presented sufficient evidence of the alleged partnership to create a genuine issue of material fact regarding whether a partnership was created. As noted, "whether a partnership exists based on the evidence in the record will usually be a question for the jury." *Wirth*, 234 Or App at 765. This is not a situation where the facts are so overwhelming that no reasonable factfinder could conclude that a partnership existed. *Id.* at 761 ("If the facts justify the single inference in the minds of reasonable people that an oral partnership agreement did *not* exist between defendants and plaintiffs * * *, then there is no genuine issue of material fact as to whether a partnership agreement existed * * *." (Emphasis in original.)).

We therefore conclude that the trial court erred in granting defendants summary judgment after concluding that plaintiffs failed to present sufficient evidence to create a general issue of material of fact as to the existence of an oral partnership agreement. Accordingly, we reverse the trial court's grant of summary judgment and the resulting dismissal of plaintiffs' claims.

Reversed and remanded as to plaintiffs' claims; otherwise affirmed.